IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS F. URBAN, II,

       Plaintiff,

vs.)                                                                    Civil Action No.

JAMES F. HUMPHREYS
1616 Kirklee Road
Charleston, West Virginia 25314;

CINDY J. KIBLINGER
105 Broncroft Place
Daniels, West Virginia 25832; and

JAMES F. HUMPHREYS &
ASSOCIATES, L.C.,
500 Virginia Street, East
Suite 800
Charleston, West Virginia 25301,

       Defendants.

## AMENDED NOTICE OF REMOVAL

1.      The defendants, James F. Humphreys, Cindy J. Kiblinger, and James F. Humphreys & Associates, L.C., remove this civil action from state court to federal court. The above-entitled action was commenced in the Superior Court of the District of Columbia. The Complaint, which was duly filed in the Office of the Clerk of said Court, was hand-delivered to James F. Humphreys on July 2, 2007, and left with a receptionist for Cindy J. Kiblinger and James Humphreys & Associates, L.C. on July 2, 2007. A copy of the Summons, Complaint, and Docket Sheet are attached hereto as Exhibit A.

2.      The plaintiff seeks compensatory damages, declaratory and injunctive relief, and attorneys fees and costs for alleged breach of contract, promissory estoppel, unjust enrichment,

quantum meruit, and intentional infliction of emotional distress arising out of the plaintiff's employment with James F. Humphreys & Associates, L.C.

3.    Upon information and belief, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) inasmuch as the plaintiff alleges that he is entitled to a percentage of certain settlement monies in the "expected sum" of "millions, perhaps tens-of-millions, of dollars."

4.    It is well settled that whether federal diversity jurisdiction exists is determined by examining a party's actual citizenship, not residency, at the time the action is commenced. *Smith v. Sperling*, 77 S. Ct. 1112, 354 U.S. 91, 1 L.E.2d 1205, 68 A.L.R.2d 805 (1957); *Beghin-Say Int'l Inc. v. Ole-Bendt Rasmuessen*, 733 F.2d 1568 (C. A. Fed. 1984).

5.    James F. Humphreys was at the commencement of this lawsuit and still is domiciled in the State of West Virginia.  Exhibit B.

6.    Cindy J. Kiblinger was at the commencement of this lawsuit and still is domiciled in the State of West Virginia.  Exhibit C.

7.    James F. Humphreys & Associates, L.C. was at the commencement of this lawsuit and still is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in the State of West Virginia.  Exhibit D.

8.    The United States District Court for the District of Columbia has diversity jurisdiction by reason of 28 U.S.C. § 1332(a)(1), inasmuch as the plaintiff is a citizen of the State of Virginia and the defendants James F. Humphreys, Cindy J. Kiblinger, and James F. Humphreys & Associates, L.C. are citizens of the State of West Virginia.  The action is removable by reason of 28 U.S.C. § 1441(b), inasmuch as none of the parties in interest that have been properly joined and served as

defendants are citizens of the State in which the action was brought.

9.    This Notice is filed within thirty (30) days after the defendant, James F. Humphreys, was served with and received copies of the summons, legal notice and Complaint.

WHEREFORE, the defendant, Continental General Insurance Company, respectfully requests that the aforesaid civil action be removed from the Circuit Court of Kanawha County, West Virginia to the United States District Court for the Southern District of West Virginia, and that said State Court proceed no further with said action.

> **JAMES F. HUMPHREYS; CINDY J. KIBLINGER; and JAMES F. HUMPHREYS & ASSOCIATES, L.C.**
>
> **By Counsel**

STEPTOE & JOHNSON, PLLC

Russell D. Jessee, Esq. (DCB No. 468844)
Chase Tower, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112
Facsimile (304) 353-8180

STEPTOE & JOHNSON, PLLC

Ancil G. Ramey, Esq. (WVSB No. 3013)
Chase Tower, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112
Facsimile (304) 353-8180

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

     **Plaintiff,**

**vs.)**                                   **Civil Action No.**

**JAMES F. HUMPHREYS**
**500 Virginia Street, East**
**Suite 800**
**Charleston, West Virginia 25301;**

**CINDY J. KIBLINGER**
**105 Broncroft Place**
**Daniels, West Virginia 25832; and**

**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.,**
**500 Virginia Street, East**
**Suite 800**
**Charleston, West Virginia 25301,**

     **Defendants.**

## VERIFICATION

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

     Ancil G. Ramey, being first duly sworn, says that he has read the foregoing ***Amended Notice of Removal*** and he knows the contents thereof, and that the facts and allegations contained therein are true, except as such are therein stated to be upon information and belief, and that as to such allegations, he believes them to be true.

                                  Ancil G. Ramey

Taken, subscribed and sworn to before me this 26th day of July, 2007.

My commission expires: Sep. 11, 2011

                                  Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BARBARA K. MATTHEY
HC 61, Box 39
Frametown, WV 25623
My Commission Expires Sept. 11, 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

     **Plaintiff,**

**vs.)**                                      **Civil Action No.**

**JAMES F. HUMPHREYS**
**500 Virginia Street, East**
**Suite 800**
**Charleston, West Virginia 25301;**

**CINDY J. KIBLINGER**
**105 Broncroft Place**
**Daniels, West Virginia 25832; and**

**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.,**
**500 Virginia Street, East**
**Suite 800**
**Charleston, West Virginia 25301,**

     **Defendants.**

### CERTIFICATE OF SERVICE

     I hereby certify that on July 26, 2007, I served the foregoing ***Amended Notice of Removal*** upon all counsel of record, by depositing a true copy thereof in the United States mail, postage prepaid, in an envelope addressed as follows:

Mark A. Smith, Esq.
Law Office of Mark A. Smith, LLC.
1785 Massachusetts NW
Suite 100
Washington, DC 20036
*Counsel for Plaintiff*

Russell D. Jesse, Esq.
DC Bar No. 468844

Ancil G. Ramey, Esq.
WV State Bar No. 3013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                                              **Civil Action No.**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

## NOTICE OF REMOVAL

1.      The defendants, James F. Humphreys, Cindy J. Kiblinger, and James F. Humphreys & Associates, L.C., remove this civil action from state court to federal court. The above-entitled action was commenced in the Superior Court of the District of Columbia. The Complaint, which was duly filed in the Office of the Clerk of said Court, was hand-delivered to James F. Humphreys on July 2, 2007, and left with a receptionist for Cindy J. Kiblinger and James Humphreys & Associates, L.C. on July 2, 2007. A copy of the Summons, Complaint, and Docket Sheet are attached hereto as Exhibit A.

2.      The plaintiff seeks compensatory damages, declaratory and injunctive relief, and attorneys fees and costs for alleged breach of contract, promissory estoppel, unjust enrichment, quantum meruit, and intentional infliction of emotional distress arising out of the plaintiff's employment with James F. Humphreys & Associates, L.C.

3.      Upon information and belief, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) inasmuch as the plaintiff alleges that he is entitled to a percentage of certain settlement monies in the "expected sum" of "millions, perhaps tens-of-millions, of dollars."

4.      It is well settled that whether federal diversity jurisdiction exists is determined by examining a party's actual citizenship, not residency, at the time the action is commenced. *Smith v. Sperling*, 77 S. Ct. 1112, 354 U.S. 91, 1 L.E.2d 1205, 68 A.L.R.2d 805 (1957); *Beghin-Say Int'l Inc. v. Ole-Bendt Rasmuessen*, 733 F.2d 1568 (C. A. Fed. 1984).

5.      James F. Humphreys was at the commencement of this lawsuit and still is domiciled in the State of West Virginia. Exhibit B.

6.     Cindy J. Kiblinger was at the commencement of this lawsuit and still is domiciled in the State of West Virginia.  Exhibit C.

7.     James F. Humphreys & Associates, L.C. was at the commencement of this lawsuit and still is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in the State of West Virginia.  Exhibit D.

8.     The United States District Court for the District of Columbia has diversity jurisdiction by reason of 28 U.S.C. § 1332(a)(1), inasmuch as the plaintiff is a citizen of the State of Virginia and the defendants James F. Humphreys, Cindy J. Kiblinger, and James F. Humphreys & Associates, L.C. are citizens of the State of West Virginia.  The action is removable by reason of 28 U.S.C. § 1441(b), inasmuch as none of the parties in interest that have been properly joined and served as defendants are citizens of the State in which the action was brought.

9.     This Notice is filed within thirty (30) days after the defendant, James F. Humphreys, was served with and received copies of the summons, legal notice and Complaint.

WHEREFORE, the defendant, Continental General Insurance Company, respectfully requests that the aforesaid civil action be removed from the Circuit Court of Kanawha County, West Virginia to the United States District Court for the Southern District of West Virginia, and that said State Court proceed no further with said action.

                                   **JAMES   F.   HUMPHREYS;   CINDY   J. KIBLINGER; and JAMES F. HUMPHREYS & ASSOCIATES, L.C.**

                                   **By Counsel**


                                   Russell D. Jessee, Esq. (DCB No. 468844)
STEPTOE & JOHNSON, PLLC            Chase Tower, Eighth Floor
                                   P.O. Box 1588
                                   Charleston, WV 25326-1588
                                   Telephone (304) 353-8112
                                   Facsimile (304) 353-8180

2

STEPTOE & JOHNSON, PLLC

Ancil G. Ramey, Esq. (WVSB No. 3013)
Chase Tower, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112
Facsimile (304) 353-8180

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THOMAS F. URBAN, II,

      Plaintiff,

vs.)                                                    Civil Action No.

JAMES F. HUMPHREYS;
CINDY J. KIBLINGER; and
JAMES F. HUMPHREYS &
ASSOCIATES, L.C.

      Defendants.

## <u>VERIFICATION</u>

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

      Ancil G. Ramey, being first duly sworn, says that he has read the foregoing *Notice of Removal* and he knows the contents thereof, and that the facts and allegations contained therein are true, except as such are therein stated to be upon information and belief, and that as to such allegations, he believes them to be true.

                                       Ancil G. Ramey

      Taken, subscribed and sworn to before me this **23rd** day of July, 2007.

      My commission expires:  Sept. 11, 2011

                                    Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
BARBARA K. MATTHEY
HC 61, Box 39
Frametown, WV 26623
My Commission Expires Sept. 11, 2011

(NOTARIAL SEAL)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                      **Civil Action No.**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 23rd day of July, 2007, I served the foregoing ***Notice of Removal*** upon all counsel of record, by depositing a true copy thereof in the United States mail, postage prepaid, in an envelope addressed as follows:

Mark A. Smith, Esq.
Law Office of Mark A. Smith, LLC.
1785 Massachusetts NW
Suite 100
Washington, DC 20036
*Counsel for Plaintiff*

Russell D. Jesse, Esq.
DC Bar No. 468844

Ancil G. Ramey, Esq.
WV State Bar No. 3013

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                 **Civil Action No. 2007 CA 003185 B**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

### <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

To:    Duane B. Delaney
        Clerk of the Superior Court
        Moultrie Courthouse
        500 Indiana Avenue, N.W., Room 2500
        Washington, D.C. 20001

        Mark A. Smith, Esq.
        Law Office of Mark A. Smith, LLC.
        1785 Massachusetts NW
        Suite 100
        Washington, DC 20036

    NOTICE IS HEREBY GIVEN you in accordance with the provisions of Title 28, U.S.C. §

1446 that on or about the 23rd day of July, 2007, the defendants in the above-styled civil action duly

filed in the United States District Court for the District of Columbia their verified "Notice of

Removal" of this civil action.

    You are further notified that on or about said date, a copy of said "Notice of Removal" was

filed with the Clerk of the United States District Court for the District of Columbia.  Your attention

is called to the fact that under the provisions of the applicable federal statutes, the above-styled civil action has now been removed to the United States District Court for the District of Columbia and that no further proceedings in the action can be had in the Superior Court of the District of Columbia.

**JAMES F. HUMPHREYS; CINDY J. KIBLINGER; and JAMES F. HUMPHREYS & ASSOCIATES, L.C.**

**By Counsel**

STEPTOE & JOHNSON, PLLC

Russell D. Jessee, Esq. (DCB No. 468844)
Chase Tower, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112
Facsimile (304) 353-8180

STEPTOE & JOHNSON, PLLC

Ancil G. Ramey, Esq. (WVSB No. 3013)
Chase Tower, Eighth Floor
P.O. Box 1588
Charleston, WV 25326-1588
Telephone (304) 353-8112
Facsimile (304) 353-8180

2

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                                    **Civil Action No. 2007 CA 003185 B**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

### CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of July, 2007, I served the foregoing *Notice of Filing Notice of Removal* upon all counsel of record, by depositing a true copy thereof in the United States mail, postage prepaid, in an envelope addressed as follows:

Mark A. Smith, Esq.
Law Office of Mark A. Smith, LLC.
1785 Massachusetts NW
Suite 100
Washington, DC 20036
*Counsel for Plaintiff*

Russell D. Jesse, Esq.
DC Bar No. 468844

Ancil G. Ramey, Esq.
WV State Bar No. 3013

## 2007 CA 003185 B URBAN, II, THOMAS F Vs. HUMPHREYS, JAMES F

| File Date | 05/07/2007 | Case Status | Open | Case Status Date | 05/07/2007 |
|---|---|---|---|---|---|
| | | Case Disposition | Undisposed | Case Disposition Date | |

### Party Information

| Party Name | Party Alias(es) | Party Type | Attorney(s) | Attorney Phone |
|---|---|---|---|---|
| URBAN, II, THOMAS F | | PLAINTIFF | SMITH, Mr MARK A PRO SE | (202)776-0022 |
| HUMPHREYS, JAMES F | | Defendant | | |
| KIBLINGER, CINDY J | | Defendant | | |
| JAMES F. HUMPHREY & ASSOCIATES, LC | | Defendant | | |

### Case Schedule

| Date | Start Time | Event Type | Result |
|---|---|---|---|
| 08/31/2007 | 09:15 AM | Initial Scheduling Conference-60 | |

### Financial Entries

| Receipt # | Date | Received From | Amount Paid |
|---|---|---|---|
| 71975 | 05/07/2007 | URBAN II, Mr THOMAS F | 120.00 |
| | Payment | | Fee | |
| | Check | 120.00 | Cost | 120.00 |

### Docket Entries

| Date | Text |
|---|---|
| 07/19/2007 | Additional eFiling Document to Amended Complaint Filed. Submitted 07/19/2007 16:37 jhc. Attorney: SMITH, Mr MARK A (439116) THOMAS F URBAN II (PLAINTIFF); |
| 07/19/2007 | Amended Complaint Filed. Submitted 07/19/2007 16:37 jhc. Attorney: SMITH, Mr MARK A (439116) THOMAS F URBAN II (PLAINTIFF); |
| 07/09/2007 | Proof of Service Method : Service Issued Issued : 05/08/2007 Service : Summons Issued Served : 07/03/2007 Return : 07/09/2007 On : HUMPHREYS, JAMES F Signed By : Reason : Proof of Service Comment : Tracking #: 5000031425 |
| 07/09/2007 | Affidavit of Service of Summons & Complaint on JAMES F HUMPHREYS (Defendant); |
| 07/09/2007 | Proof of Service Method : Service Issued Issued : 05/08/2007 Service : Summons Issued Served : 07/03/2007 Return : 07/09/2007 On : JAMES F. HUMPHREY & ASSOCIATES, LC Signed By : James F. Humphreys Reason : Proof of Service Comment : Tracking #: 5000031427 |
| 07/09/2007 | Affidavit of Service of Summons & Complaint on JAMES F. HUMPHREY & ASSOCIATES, LC (Defendant); |
| 07/04/2007 | Entry of Appearance of Counsel for Plaintiff Filed. submitted 07/04/2007 08:52. ab Attorney: SMITH, Mr MARK A (439116) THOMAS F URBAN II (PLAINTIFF); |
| 05/08/2007 | Issue Date: 05/08/2007 Service: Summons Issued Method: Service Issued Cost Per: $ HUMPHREYS, JAMES F 3030 K STREET NW #3B WASHINGTON, DC 20007 Tracking No: 5000031425 KIBLINGER, CINDY J. 105 BRONCROFT PLACE DANIELS, WV 25832 Tracking No: 5000031426 JAMES F. HUMPHREY & ASSOCIATES, LC 500 VIRGINIA STREET EAST STE 800 CHARLESTON, WV 25301 Tracking No: 5000031427 |
| 05/07/2007 | Event Scheduled Event: Initial Scheduling Conference-60 Date: 08/31/2007 Time: 9:15 am Judge: TERRELL, MARY A Location: Courtroom 219 |
| 05/07/2007 | Complaint for Declaratory Judgment Filed Receipt: 71975 Date: 05/07/2007 |



**EXHIBIT**

*A*



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

THOMAS F URBAN II
    Vs.                                       C.A. No.       2007 CA 003185 B
JAMES F HUMPHREYS

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR-Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MARY A TERRELL
Date:  May 7, 2007
Initial Conference: 9:15 am, Friday, August 31, 2007
Location:  Courtroom 219
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington,  D.C.  20001  Telephone:  879-1133

| Thomas F. Urban II | 0003185-07 |
| *Plaintiff* | |
| VS. | Civil Action No. |
| Cindy J. Kiblinger | |
| *Defendant* | |

### SUMMONS

To  the  above  named  Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government  you have  60 days after  service of this summons to serve your Answer. A copy of the Answer must be mailed  to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You  are  also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Thomas F. Urban II | |
| Name of Plaintiff's Attorney | |
| 2867 S. Abingdon St. | By |
| Address | *Deputy Clerk* |
| Arlington, Virginia 22206 | |
| (703) 861-5235 | Date May 7, 2007 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98       **NOTE:**  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

THOMAS F. URBAN II,                                    )
2867 S. Abingdon Street,                               )
Arlington, Virginia 22206,                             )
                                                       )        0003185-07
            Plaintiff,                                 )
                                                       )
v.                                                     )    CIVIL ACTION NO.
                                                       )
                                                       )
JAMES F. HUMPHREYS,                                    )    JURY DEMAND
3030 K Street, N.W.,                    RECEIVED       )
Penthouse Apartment 3B           Civil Clerk's Office  )
Washington, D.C. 20007,                                )
                                       MAY 0 7 2007    )
                                     Superior Court of the
CINDY J. KIBLINGER,                  District of Columbia
105 Broncroft Place,                 Washington, D.C.
Daniels, West Virginia 25832,                          )
                                                       )
      and                                              )
                                                       )
JAMES F. HUMPHREYS & ASSOCIATES, L.C.                  )
500 Virginia Street East, Suite 800,                   )
Charleston, West Virginia 25301,                       )
                                                       )
            Defendants.                                )
                                                       )

PLAINTIFF'S COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS, DAMAGES,
AND DECLARATORY RELIEF

PRELIMINARY STATEMENT

This is an action for breach of contract, intentional infliction of emotional distress,

declaratory and injunctive relief, and damages brought by Plaintiff, THOMAS F. URBAN II,

against JAMES F. HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS &

ASSOCIATES, L.C.  Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred on this Court pursuant to 11 D.C. § 921. The vast majority of the events complained of in this complaint, including Plaintiffs hiring and firing, as well as the numerous promises and tortuous conduct against Plaintiff by Defendant Humphreys occurred in the District of Columbia.

2.  Venue in the District of Columbia is appropriate because all three Defendants have directed their dealings and engaged in the breach of contract and/or the intentional infliction of emotional distress at Plaintiff, who was working in Washington, D.C. Plaintiff Urban was hired in Washington, D.C. to work in the Washington, D.C. office. Each Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.  Plaintiff, THOMAS F. URBAN II (hereinafter, "URBAN"), is a Virginia resident licensed to practice law in Virginia and the District of Columbia, with a residence at 2867 S. Abingdon Street, Arlington, Virginia 22206.

4.  Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult individual residing in Washington, D.C. and licensed to practice law in the District of Columbia. Mr. Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 3B, Washington, D.C. 20007. His primary office is at 1200 New Hampshire Avenue, N.W., Suite 510, Washington, D.C. 20036.

5.  Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West Virginia. Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft Place, Daniels, West Virginia 25832. Her office is at 500 Virginia Street East, Suite

2

800, Charleston, West Virginia 25301, but she also supervised Plaintiff Urban's work in Washington, D.C.

6.     Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a business with its principal office at 500 Virginia Street East, Suite 800, Charleston, West Virginia 25301, and an office at 1200 New Hampshire Avenue, N.W. , Suite 510, Washington, D.C. 20036. Defendant Humphreys is the sole owner of the Firm. Defendant Kiblinger is the supervising attorney of the Firm.

## FACTS

7.     Plaintiff Urban was hired by Defendants Humphreys and the Firm effective July 2004. During the negotiations culminating in Plaintiff Urban's employment with the Firm, certain representations were made to him, including but not limited to the fact that Defendant Humphreys would hire staff in the Washington, D.C. office of the Firm, that Plaintiff would be eligible for yearly raises and bonuses, and that Plaintiff would be provided with adequate resources in order to properly litigate the cases to which he was assigned. Plaintiff Urban was promised that Defendant Humphreys and the Firm had adequate financial resources to litigate cases in the manner in which Plaintiff Urban was accustomed to litigating cases at large defense firms.

8.     When Plaintiff was hired, he was given an initial salary of $160,000.00 per year, a salary significantly below the appropriate salary in the Washington, D.C. area for an attorney of Plaintiff Urban's education, skill, and experience. Plaintiff Urban agreed to this lower salary based upon his reliance on promises of bonuses and raises by Defendant Humphreys.

3

9.  Soon after being hired by Defendant Humphreys and joining the Firm, Plaintiff Urban was assigned to work on an environmental toxic tort class action against the Monsanto Company and other defendants involving contamination from a plant in Nitro, West Virginia, as well as assigned to handle all of the pharmaceutical cases being handled by the Firm. Prior to these assignments, the Firm had virtually no experience with large environmental toxic tort cases or pharmaceuticals cases. As Defendant Humphreys knew, these cases would take several years until they were resolved and would bring money into the Firm. Conservatively, the Monsanto case was the largest single case that the firm had ever handled and was "the most important case in the firm" during the time of Plaintiff Urban's employment by Defendant Humphreys' own admission.

10. Despite promises by Defendant Humphreys that staff in D.C. would be hired, once Plaintiff Urban joined the Firm, Defendant Humphreys insisted that all of Plaintiff Urban's staff be hired and work in the West Virginia office, purportedly as a cost-savings matter. The little staff that was hired in the D.C. office, one receptionist position, was the source of constant turn-over due to Defendant Humphrey's dissatisfaction with the occupants of that position.

11. After five months at the firm, Defendant Humphreys and the Firm raised Plaintiffs' salary $10,000.00, for a total yearly salary of $170,000.00, as of January 2005. Defendant Humphreys stated that Plaintiff Urban was doing a terrific job with the cases to which he was assigned.

12. Throughout 2005 and 2006, Plaintiff Urban worked substantial hours, including significant travel and time spent in West Virginia. Plaintiff Urban was the only attorney assigned to over three thousand pharamaceutical intakes and filed over five hundred

4

pharmaceutical cases, despite repeated requests to Defendant Humphreys for more attorney assistance. In addition, Plaintiff Urban was essentially the only Firm attorney assigned to the major environmental toxic tort class action concerning a Monsanto plant in Nitro, West Virginia. This case also required substantial work and significant travel. Again, Plaintiff Urban repeatedly sought that Defendant Humphreys assign additional attorney assistance with this case, a request that was consistently rejected. In fact, in the summer of 2005, Defendant Humphreys fired the only attorney who had provided any real modicum of assistance to Plaintiff Urban on the Monsanto case.

13.    Similarly, Plaintiff Urban's requests that he be provided with staff in the Washington, D.C. office were rejected by Defendant Humphreys. In fact, for most of 2006, the Washington, D.C. office did not have a receptionist and Plaintiff Urban was required to interrupt his work when in the office to answer the telephone and greet visitors for Defendant Humphreys.

14.    At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff Urban with any raise or bonus. Defendant Humphreys assured Plaintiff Urban that he was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff Urban had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff Urban that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff Urban brought income to the Firm that Plaintiff Urban "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff Urban "rich" when the cases were settled or otherwise resolved.

5

15.    At the end of 2006, Defendant Humphreys and the Firm again failed to provide Plaintiff

       Urban with any raise or bonus.  Defendant Humphreys assured Plaintiff Urban that he

       was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been

       assigned had not yet brought revenue to the firm.  Defendant Humphreys acknowledged

       the long hours that Plaintiff Urban had been working, including substantial overnight

       travel to West Virginia.  Defendant Humphreys assured Plaintiff Urban that Defendant

       Humphreys would make sure that when the cases being worked up by Plaintiff Urban

       brought income to the Firm that Plaintiff Urban would be compensated with a

       significant bonus at that time.

16.    On March 30, 2007, Plaintiff Urban and Defendant Humphreys attended the first

       settlement meeting with the Defendants in the Monsanto case involving Nitro, West

       Virginia.  The meeting went so well that Defendant Humphreys agreed to a ninety day

       stay of all proceedings in the case in order that a settlement could be worked out.

17.    Similarly, the first batch of six pharmaceuticals cases were sent to a defendant on May

       3, 2007, after an agreement by that defendant that a settlement offer would be made on

       these cases.

18.    During the weeks after the first announcements of a possible settlement and intensifying

       after March 30, 2007, Defendant Humphreys and Defendant Kiblinger engaged in a

       series of abusive e-mail correspondence, telephone calls, and conversations directed at

       Plaintiff Urban.

19.    On May 4, 2007, while Plaintiff Urban was home sick, Defendant Humphreys called

       him at home in order to terminate Plaintiff Urban's employment with the Firm.

       Although Defendant Humphreys attempted to set forth various pretextual reasons for

6

Plaintiff Urban's firing, it is clear that Plaintiff Urban was fired so that Defendant

Humphreys could avoid sharing in any of the profits of the Monsanto case and the

pharmaceuticals cases with Plaintiff Urban.

## COUNT I

## BREACH OF AGREEMENT

20.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 19 as if

they were fully set forth.

21.    Defendant Humphreys, both on behalf of himself and on behalf of the Defendant Firm,

made certain representation about compensation, delayed compensation, bonuses,

sharing in profits, and raises, as described above.

22.    Plaintiff Urban relied upon these promises and in reliance on these promises, continued

to work for the Defendant Firm despite the failure of Defendant Humphreys and the

Firm to provide Plaintiff Urban with promised raises and bonuses.  Plaintiff Urban

relied upon Defendant Humphreys' promises of substantial compensation once the

cases on which Plaintiff Urban developed and litigated reached resolution.

23.    Defendant Humphreys fired Plaintiff Urban without fulfilling any of these promises.

24.    Defendants Humphreys and the Firm will likely profit in an enormous amount, likely in

the millions of dollars, due to the hard work and extreme effort engaged in by Plaintiff

Urban on the Monsanto and pharmaceuticals cases based upon these promises.

25.    Plaintiff Urban has been significantly damaged monetarily because of these breaches of

the promises made by Defendants Humphreys and the Firm.

WHEREFORE, Plaintiff respectfully requests the following relief against the

Defendants:

7

A.    That a judgment be entered against Defendant Humphreys and the Firm and in favor of Plaintiff Urban in the amount that the fact-finder determines that Plaintiff Urban has been injured by these Defendants' breach of contract;

B.    That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.    That such other and further relief be granted as this Court may deem just and proper.

## COUNT II

## DECLARATORY JUDGMENT –

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

26.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 25 as if they were fully set forth.

27.    Defendant Humphreys and the Firm made promises to Plaintiff Urban that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff Urban "rich."

28.    Defendants Humphreys and the Firm have not honored these promises. Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

29.    Plaintiff Urban has insisted that he is entitled to a percentage of the attorneys' fee for each of the cases on which he worked, including but not limited to the Monsanto case.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants Humphreys and the Firm:

8

A.    That a declaratory judgment be entered against Defendant Humphreys and the Firm in favor of Plaintiff Urban that he be provided with no less than twenty-five (25) per cent of the attorneys' fees earned by Defendant Firm or any successor or assign for the cases on which Plaintiff Urban worked, including but not limited to the Monsanto case and all pharmaceuticals cases filed by Plaintiff Urban while at the Firm;

B.    That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.    That such other and further relief be granted as this Court may deem just and proper.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 23 as if they were fully set forth.

31.    Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves and the Firm, engaged in a series of abusive interactions with Plaintiff Urban. It is likely that these interactions were intended to encourage Plaintiff Urban to seek other employment and forego the promised compensation to which Plaintiff Urban was due.

32.    As described above, this abusive activity was so outrageous, without justification or excuse, as to be beyond the bounds of decency.

33.    This behavior was calculated to and did cause Plaintiff Urban harmful physical consequences which required Plaintiff Urban to seek medical help.

9

34.    Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be

held liable for the tort of intentional infliction of emotional distress or outrage.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants

Humphreys, Kiblinger, and the Firm:

    A.    That a judgment be entered against all three Defendants in the amount

that the fact-finder determines that Plaintiff has been injured by

Defendants' intentional infliction of emotional distress;

    B.    That judgment be entered for the costs of this suit and reasonable

attorneys' fees against these Defendants and in favor of Plaintiff Urban;

    C.    That such other and further relief be granted as this Court may deem just

and proper.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the

Defendants:

    A.    That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff has been injured by

Defendants' breach of contract;

    B.    That a declaratory judgment be entered declaring that Plaintiff is entitled to

no less than twenty-five (25) percent of any attorneys' fee that Defendants

Humphreys and/or the Firm, their assigns, or successors obtain as a result of

any of the matters on which Plaintiff worked during his employment with

Defendant Firm;

10

C. That a judgment be entered against Defendants Humphreys, Kiblinger, and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' intentional infliction of emotional distress;

D. That judgment be entered for the costs of this suit and reasonable attorneys' fees against all Defendants and in favor of Plaintiff Urban;

E. That such other and further relief be granted as this Court may deem just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

DATED this 7th day of May, 2007.

Respectfully submitted,

Thomas F. Urban II
 D.C. Bar No. 432127
2867 S. Abingdon St.
Arlington, Virginia 22206
(703) 861-5235
(703) 931-0206 (facsimile)
tfuii@yahoo.com

and

James H. Falk, Jr.
10101 Colvin Run Rd
Great Falls, Virginia 22066
(703) 928-1600
(703) 759-0859 (facsimile)
sportlaw@hotmail.com

Attorneys for Plaintiff

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

THOMAS F. URBAN II,                      )
2867 S. Abingdon Street,                 )
Arlington, Virginia 22206                )
                                         )
              Plaintiff,             )
                                         )
v.                                       )    C.A. NO. 2007 CA 003185 B
                                         )
                                         )
JAMES F. HUMPHREYS                       )        JURY DEMAND
3030 K Street, N.W.                      )
Penthouse Apartment 301                  )
Washington, D.C. 20007                   )
                                         )
CINDY J. KIBLINGER                       )
105 Broncroft Place                      )
Daniels, West Virginia 25832             )
                                         )
      and                    )
                                         )
JAMES F. HUMPHREYS & ASSOCIATES, L.C.    )
1200 New Hampshire Avenue, NW            )
Suite 510                                )
Washington, DC 20036                     )

## AMENDED COMPLAINT

### Preliminary Statement

    This is an action for breach of contract, promissory estoppel, unjust enrichment,

quantum meruit, intentional infliction of emotional distress, declaratory and injunctive relief,

and damages. It is brought by Plaintiff, THOMAS F. URBAN II, against JAMES F.

HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS & ASSOCIATES,

L.C. Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred on this Court pursuant to 11 D.C. Code § 921.  The vast majority

    of the events presented in this complaint, including Plaintiff's hiring and firing, various

    tortious acts against Plaintiff, and the core breach of contract, occurred in the District of

    Columbia.

2.  Venue in the District of Columbia is appropriate because the events alleged in this

    complaint occurred substantially in the District of Columbia and because the Firm has

    offices in the District of Columbia, which is where Plaintiff's office was during his

    employment with the Firm.  In addition to these facts, Defendant Humphreys, himself,

    has a personal residence in the District of Columbia and a D.C. office in the same suite

    where Plaintiff was formerly located.  The Defendants routinely deal with the D.C. office

    and engaged in activities there frequently during Plaintiff's period of employment.  Each

    Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.  Plaintiff, THOMAS F. URBAN II (hereinafter, "Plaintiff"), is a Virginia resident

    licensed to practice law in Virginia and the District of Columbia, with a residence at 2867

    S. Abingdon Street, Arlington, Virginia 22206.

4.  Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult residing in

    Washington, D.C. and licensed to practice law in the District of Columbia.  Mr.

    Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 301,

    Washington, D.C. 20007.  His primary office is at 1200 New Hampshire Avenue, N.W.,

    Suite 510, Washington, D.C. 20036.

5.    Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West

Virginia.  Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft

Place, Daniels, West Virginia 25832.  Her office is at 500 Virginia Street East, Suite 800,

Charleston, West Virginia 25301.  She, however, supervised Plaintiff's work in

Washington, D.C.

6.    Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a business

with an office at 1200 New Hampshire Avenue, N.W. , Suite 510, Washington, D.C.

20036.  Defendant Humphreys is the sole owner of the Firm.  Defendant Kiblinger is the

supervising attorney of the Firm.

## FACTS

7.    Defendant Humphreys hired Plaintiff to work at his Firm effective July 2004.  During the

negotiations that culminated in Plaintiff's employment with the Firm, certain agents of

the Firm, including Defendant Humphreys, made various representations to Plaintiff.

Among such representations were the following: (1) that Defendant Humphreys would

hire staff in the Washington, D.C. office of the Firm; (2) that Plaintiff would be eligible

for yearly raises; (3) that Plaintiff would receive case-related bonuses, and (4) that

Plaintiff would be provided with adequate resources in order properly to litigate the cases

to which he was assigned.  Defendant Humphreys promised Plaintiff that the Firm had

adequate financial resources to litigate cases in the manner in which Plaintiff was

accustomed to litigating cases at large defense firms.  Plaintiff had been an associate at

the firm of Williams and Connolly for five years and had worked at other large, reputable

defense firms.

3

8.   Defendant Humphreys hired Plaintiff at a starting salary of $160,000.00 per year, an
     amount significantly below the appropriate salary in the Washington, D.C. area for an
     attorney of Plaintiff's education, skill, and experience. Plaintiff agreed to this lower
     salary based upon his reliance on the opportunity for raises and the promises of case-
     related bonuses.

9.   Soon after Defendant Humphreys had hired Plaintiff and added him to the Firm, Plaintiff
     was assigned to work on an environmental toxic tort class action against the Monsanto
     Company, and other defendants, involving contamination from a plant in Nitro, West
     Virginia. Plaintiff was also assigned a bevy of pharmaceutical cases being handled by
     the Firm. Prior to these assignments, the Firm had virtually no experience with large
     environmental toxic tort cases or pharmaceutical cases. As Defendant Humphreys knew,
     these cases would take several years until they matured to the point that they would bring
     money into the Firm. Conservatively, the Monsanto case was the largest single case that
     the firm had ever handled and, according to Defendant Humphreys, was "the most
     important case in the firm" during the time of Plaintiff's employment.

10.  Despite Defendant Humphreys's promises that he would arrange for the hiring of
     additional staff in D.C., Defendant Humphreys did not do that. Instead, he insisted that
     all of Plaintiff's staff be hired in West Virginia and work in the West Virginia office,
     purportedly as a cost-savings matter.

11.  As of January 2005, after five months at the firm, Defendant Humphreys and the Firm
     raised Plaintiffs' salary $10,000.00 to $170,000.00. Defendant Humphreys stated that
     Plaintiff was doing a terrific job with the cases to which he had been assigned.

4

12.    From late 2004 through April 2007, Plaintiff worked substantial hours, including

significant travel to West Virginia. Plaintiff was the only attorney assigned to over two

thousand pharmaceutical intakes and, himself, filed over four hundred pharmaceutical

cases. Defendant Humphreys ignored Plaintiff's repeated requests for more attorney

assistance. In addition, Plaintiff was essentially the only Firm attorney assigned to

Monsanto case. Indeed, prior to Plaintiff's arrival at the Firm, there was no attorney

handling class action suits. Plaintiff was the chief lawyer at the firm involved in the

filing of the Monsanto case, and he was the one in the Firm responsible for its

management, development, and prosecution. In terms of Humphrey's firm, it was mainly

because of Plaintiff's efforts that the Monsanto suit became the subject of settlement

discussions in March of 2007. For nearly two and a half years, the case required steady,

substantial work and significant travel. Again, Plaintiff repeatedly entreated Defendant

Humphreys to assign additional attorney assistance with this case, but Defendant

Humphreys would not. Indeed, in the summer of 2005, Defendant Humphreys fired the

only attorney who had provided any meaningful assistance to Plaintiff on the Monsanto

case.

13.    Similarly, Defendant Humphreys rejected Plaintiff's requests that he be provided with

staff in the Washington, D.C. office. In fact, for most of 2006, the Washington, D.C.

office did not have a receptionist and Plaintiff was required, in addition to carrying his

considerable attorney work-load, to answer the telephone, field visitors, and run errands

for Defendant Humphreys.

14.    At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff with

any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a

terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases that Plaintiff worked brought income to the Firm, Plaintiff "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff "rich" when the cases were settled or otherwise resolved.

15. At the end of 2006, Defendant Humphreys and the Firm, again, failed to provide Plaintiff with any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys again acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff brought income to the Firm, Plaintiff would be compensated with a significant bonus at that time.

16. Until mid to late 2006, Plaintiff and Defendant Humphreys had a cordial, amicable relationship. This changed when Plaintiff asked Defendant Humphreys to put in writing his oft-repeated promise that Plaintiff would receive substantial bonus money when his cases yielded revenues to the firm.

17. On March 30, 2007, after almost two and a half years of the firm's involvement in class action litigation that had been handled almost exclusively by Plaintiff, Plaintiff and Defendant Humphreys attended the first settlement meeting with the defendants in the Monsanto case. The meeting went well for Defendant Humphreys and the Firm, and

6

Defendant Humphreys agreed to a ninety-day stay of all proceedings in the case in order that a settlement could be worked out.

18.    Similarly, Plaintiff had the first batch of six pharmaceuticals cases sent to Pfizer on or about May 3, 2007, after having earlier negotiated an agreement with that defendant, which strongly promoted a settlement-offer being received to resolve those cases.

19.    Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff. The expected sum is in the millions, perhaps tens-of-millions, of dollars. If realized, these sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and the pharmaceutical cases.

20.    During the weeks after the first announcement of a possible settlement in the Monsanto case, Defendant Humphreys and Defendant Kiblinger engaged in a series of harassing e-mail correspondences, telephone calls, and conversations directed at Plaintiff.

21.    On or about May 4, 2007, while Plaintiff was home sick, and within one month of the death of Plaintiff's mother and six months after the sudden death of his father, Defendant Humphreys called Plaintiff at home in order to terminate Plaintiff's employment with the Firm. Although Defendant Humphreys attempted to set forth various pretextual reasons for Plaintiff's firing, reasonable review of the evidence will lead to the conclusion that Plaintiff was fired so that Defendant Humphreys could avoid according Plaintiff an appropriate share of the profits from the settlement of the Monsanto case and the pharmaceuticals cases.

## COUNT I

## BREACH OF CONTRACT

7

22.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

23.    Plaintiff made clear, through various statements that he made to Defendant Humphreys, that, consistent with his level of experience, his considerable contribution to the development of the relevant cases, and in accord with the common patterns of compensation in the Plaintiffs bar of the legal practice, he desired and expected much greater compensation for his work than his base salary represented.

24.    Defendant Humphreys recognized Plaintiff's expectation and responded to it by offering him, instead of a considerably higher salary, the prospect of participating, in the form of bonuses, in proceeds from cases he had work on while at the firm.  Plaintiff accepted Defendant Humphreys's offer.  In consideration he went without the higher salary or non-case related bonuses and continued to work on the cases for the comparatively modest salary he was receiving.

25.    Defendant Humphreys fired Plaintiff to avoid having to fulfill the terms of this contract, which he knew would in all probability prove quite lucrative to Plaintiff.

26.    Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff.  The expected sum is in the millions, perhaps tens-of-millions, of dollars.  These sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and pharmaceutical cases.

27.    Plaintiff has been significantly damaged monetarily because of Defendants' breach of this contract.

**COUNT II**

8

## PROMISSORY ESTOPPEL

28.   Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations

contained in Paragraphs 1 through 21 as if they were fully set forth.

29.   Defendant Humphreys promised Plaintiff that he would receive a bonus when each case

that Plaintiff had been working yielded revenues for the Firm.

30.   Plaintiff continued working on the Monsanto case and the pharmaceutical cases, despite

not receiving annual raises or any bonus, because of his reliance on Defendant

Humphreys's promise.

31.   To the extent that the Firm receives funds as a result of those cases, Plaintiff will have

relied on Defendant's promise to his detriment.


## COUNT III

### UNJUST ENRICHMENT

32.   Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations

contained in Paragraphs 1 through 21 as if they were fully set forth.

33.   Plaintiff's extended hard work and professional input, direction, development, and

judgment in connection with the Monsanto case and the pharmaceutical cases, conferred

a benefit upon Defendant Humphreys and the Firm worth a percentage of whatever turns

out to be the settlement amount of those cases.

34.   Defendant Humphrey and the Firm had an appreciation and knowledge of the benefit

conferred by Plaintiff.

35.   Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon

them by Plaintiff.

9

36.   Under the circumstances, it is inequitable for Defendants to retain the benefits conferred upon them by Plaintiff without payment to Plaintiff of the fair value, under the circumstances, of such benefits.

## COUNT IV

## **QUANTUM MERUIT**

37.   Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

38.   Plaintiff conferred a benefit upon Defendant Humphreys and the Firm in the form of working, developing, and litigating the Monsanto and pharmaceutical cases to the point that they were ripe for settlement.

39.   Defendant Humphreys and the Firm had an appreciation and knowledge of the benefit conferred by Plaintiff.

40.   Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon them by Plaintiff's considerable efforts, which resulted in the Monsanto case and the pharmaceutical cases leading to potentially very lucrative settlement discussions.

41.   Under the circumstances, it is inequitable for Defendant Humphreys and the Firm to retain the benefits conferred upon them by Plaintiff without payment to Plaintiff of the fair value of such benefits.

## COUNT V

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

42.   Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

10

43.    Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves and the Firm, engaged in a series of abusive interactions with Plaintiff.  It is probable that these interactions were intended to encourage Plaintiff to seek other employment and forego the promised compensation to which Plaintiff was due.

44.    As described above, this abusive activity was so outrageous, without justification or excuse, as to be beyond the bounds of decency.

45.    This behavior could foreseeably have caused, and did cause, Plaintiff harmful, physical consequences, which required Plaintiff to seek medical help.

46.    Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be held liable for the tort of intentional infliction of emotional distress.

## COUNT VI

## DECLARATORY JUDGMENT

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

47.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

48.    Defendant Humphreys and the Firm made promises to Plaintiff that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff "rich."

49.    Defendants Humphreys and the Firm have not honored these promises.  Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

11

50.   Plaintiff has insisted that he is entitled to a percentage of the attorneys' fee for each of the

cases on which he worked, including but not limited to the Monsanto case.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the

Defendants:

A.   That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff has been injured by

Defendants' breach of contract;

B.   That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled based

upon the doctrine of promissory estoppel;

C.   That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled to based

upon the doctrine of unjust enrichment;

D.   That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled to based

upon the doctrine of quantum meruit;

E.   That a judgment be entered against Defendants Humphreys, Kiblinger, and

the Firm in the amount that the fact-finder determines that Plaintiff has been

injured by Defendants' intentional infliction of emotional distress;

F.   That a declaratory judgment be entered declaring that Plaintiff is entitled to a

percentage of any attorneys' fee that Defendants Humphreys and/or the

12

Firm, their assigns, or successors obtain as a result of any of the matters on
which Plaintiff worked during his employment with Defendant Firm;

G.  That judgment be entered for the costs of this suit and reasonable attorneys'
fees against all Defendants and in favor of Plaintiff;

H.  That such other and further relief be granted as this Court may deem just and
proper.


PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.


DATED this 2nd day of July, 2007.


Respectfully submitted,

Mark A. Smith
D.C. Bar No. 439116
1785 Massachusetts NW
Suite 100.
Washington, DC 20036
(202) 776-0022
(202) 756-7516 (facsimile)
marksmith@masmithlaw.com
masmithlaw.com
Attorney for Plaintiff

13

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| THOMAS F. URBAN II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2007-CA-003185 B |
| | ) | Judge Mary A. Terrell |
| | ) | |
| JAMES F. HUMPHREYS, | ) | Next Event: Initial Conference |
| et al. | ) | August 31, 2007 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS
## TO DEFENDANT CINDY J. KIBLINGER

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule 36(a), hereby requests that Defendant Cindy J. Kiblinger ("Kiblinger") appropriately answer, separately, fully in writing, and under oath, each of the following requests for admission and are further requested to serve your Answer on Plaintiff Urban, within forty-five (45) days from the date of service of these requests for admission, by causing same to be delivered to the offices of Mark A. Smith, Law Office of Mark A. Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20006.

You are further requested to supplement your Answers to these requests for admissions not less than thirty (30) days prior to the beginning of trial if you later obtain information upon the basis of which:

1.    You know that the Answer to any request for admission was incorrect when made; or

2.    You know that the Answer to any such request for admission though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment or misrepresentation.

If you object to any request for admission based on a claim of privilege, work product or any other exemption from discovery, state fully the reasons for each objection and answer all portions of the requests for admission to which the claimed exemption does not apply.

Unless the request can be completely admitted, Plaintiff Urban requests that Defendant Cindy J. Kiblinger admit so much of the request as is true and qualify or deny only the remainder.

For each of the requests for admission above, unless your response has been an unqualified admission, set forth in detail the evidence upon which you expect to rely to contest the requested admission.

## DEFINITIONS AND INSTRUCTIONS

A.    These requests for admission are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.    "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.    "Defendant" shall refer to Defendant Cindy J. Kiblinger, and, where applicable, any other person acting on purporting to act on her behalf, employees, and agents, including any attorney or other representative.

2

D.    "Other Defendants" in this Set of Requests shall refer to the following other Defendants to this action: James F. Humphreys & Associates, L.C. and James F. Humphreys.

E.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendants, including any attorney or other representative.

F.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

G.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

H.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, or otherwise.

I.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement made by the person making it and contemporaneously recorded.

3

J.      "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, dairy entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made.  The terms "document" and "documents"

4

shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within he foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the Defendant. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

K.    "Relating to" as used in these requests means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

L.    "Injury" or "injuries" as used herein includes not only physical or mental injury, but economic or financial injury as well.

M.    The "Monsanto case" refers to the case Allen, et al. v. Monsanto Company, et al., Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

N.     If you object to any of these requests for admission based on a claim of privilege, work product or any other exemption from discovery, please provide a privilege log describing in detail the reasons for each objection.

## REQUESTS FOR ADMISSION

1.     Defendant Kiblinger became the managing attorney of Defendant James F. Humphreys & Associates, L.C. ("JFHA") in 2006.

2.     When Defendant Kiblinger became managing attorney of Defendant JFHA, she supervised Plaintiff Urban's work in Washington, D.C.

3.     Plaintiff Urban did substantially all of the work done on the Monsanto case by Defendant JFHA from September 2004 until May 2007.

4.     Plaintiff Urban repeatedly requested the assistance of another attorney on the Monsanto case prior to April 2007, but was provided very little such assistance.

5.     Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Vioxx cases effective October 2004.

6.     Defendant JFHA had never handled a large scale pharmaceutical litigation like the Vioxx cases prior to October 2004.

7.     Plaintiff Urban did substantially all of the legal work done on the Vioxx cases handled by Defendant JFHA from October 2004 through October 2006.

8.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on information provided by the clients.

9.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on information provided by the clients before any of the client's medical records had been

6

ordered.

10.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Vioxx cases to reduce costs.

11.    Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases without any expert reports from a physician that supported specific causation for that specific Vioxx case.

12.    Plaintiff Urban reviewed more than 2000 Vioxx intakes for potential clients.

13.    Plaintiff Urban filed over 275 Vioxx cases while employed at Defendant JFHA.

14.    Plaintiff Urban repeatedly requested the assistance of another attorney on the Vioxx cases prior to September 2006, but was provided very little such assistance.

15.    Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Celebrex cases effective November 2004.

16.    Plaintiff Urban did substantially all of the legal work done on the Celebrex cases handled by Defendant JFHA from November 2004 through October 2006.

17.    Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients.

18.    Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients before any of the client's medical records had been ordered.

19.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Celebrex cases to reduce costs.

20.    Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases without any expert reports from a physician that supported specific causation for that specific

7

Celebrex case.

21.    Plaintiff Urban filed over 100 Celebrex cases while employed at Defendant

JFHA.

22.    Plaintiff Urban repeatedly requested the assistance of another attorney on the

Celebrex cases prior to September 2006, but was provided very little such assistance.

23.    Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant

JFHA's Bextra cases effective November 2004.

24.    Plaintiff Urban did substantially all of the legal work done on the Bextra cases

handled by Defendant JFHA from November 2004 through October 2006.

25.    Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on

information provided by the clients.

26.    Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on

information provided by the clients before any of the client's medical records had been

ordered.

27.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on

the ordering of medical records for Bextra cases to reduce costs.

28.    Defendant Humphreys ordered Plaintiff Urban to file Bextra cases without any

expert reports from a physician that supported specific causation for that specific Bextra

case.

29.    Plaintiff Urban filed over 30 Bextra cases while employed at Defendant JFHA.

30.    Plaintiff Urban repeatedly requested the assistance of another attorney on the

Bextra cases prior to September 2006, but was provided very little such assistance.

31.    Plaintiff Urban was never provided with any paralegals in the Washington, D.C.

8

office of Defendant JFHA.

32.    Plaintiff Urban was never provided with any legal secretaries in the Washington, D.C. office of Defendant JFHA.

33.    For most of 2006, the Washington, D.C. office of Defendant JFHA did not have a receptionist.

34.    Because the Washington, D.C. office of Defendant JFHA did not have a receptionist for most of 2006, Plaintiff Urban was required to answer the telephone and take messages for Defendant Humphreys during that time.

35.    Defendant Humphreys has not kept complete time records for the Monsanto case for all of the work done by him on the case since September 2004.

36.    Defendant Kiblinger has not kept complete time records for all of the legal work she has done since September 2004.

37.    Defendant Kiblinger has not kept complete time records for all of the legal work she has done since January 2005.

38.    Most of the attorneys employed by Defendant JFHA have not kept complete time records for all of the legal work they have done since January 2005.

39.    Representatives from the Monsanto Company met with Defendant Humphreys, Plaintiff Urban, and representatives from The Calwell Practice for the first settlement negotiation in the Monsanto case on March 30, 2007.

40.    Defendant Kiblinger heard Defendant Humphreys yell at Plaintiff Urban to "shut up" when Urban was trying to explain a point during a phone call between Humphreys, Kiblinger, Tim Barber, and Plaintiff Urban on or about April 11, 2007.

41.    On or about April 18, 2007, Defendant Kiblinger had a conference call or meeting

9

with Defendant Humphreys that had as one of the agenda items a topic regarding or

similar to "how to logistically terminate an attorney."

42.    On or about April 18, 2007, Defendant Kiblinger had a conference call or meeting

with Defendant Humphreys and Tim Barber that had as one of the agenda items a topic

regarding or similar to "how to logistically terminate an attorney."

43.    On or about April 18, 2007, Defendant Kiblinger had a conference call or meeting

with Defendant Humphreys that had as one of the agenda items how to terminate Plaintiff

Urban with the least negative impact of Defendant JFHA.

44.    In April, 2007, Defendant Humphreys through Defendant Kiblinger ordered

Plaintiff Urban to train three other JFHA attorneys to work on the Monsanto case.

45.    In April, 2007, Defendant Humphreys through Defendant Kiblinger ordered

Plaintiff Urban to provide copies of all of Plaintiff Urban's time sheets from the period

2004 to April 2007.

46.    Defendant Kiblinger received a raise in salary in 2004.

47.    Defendant Kiblinger received a raise in salary in 2005.

48.    Defendant Kiblinger received a raise in salary in 2006.

49.    Defendant Kiblinger received a raise in salary in 2007.

50.    Defendant Kiblinger received a bonus in salary in 2004.

51.    Defendant Kiblinger received a bonus in salary in 2005.

52.    Defendant Kiblinger received a bonus in salary in 2006.

53.    Defendant Kiblinger received a bonus in salary in 2007.

54.    Defendant Kiblinger never provided any written performance appraisal or

evaluation to Plaintiff Urban.

55.    Defendant Kiblinger never provided any negative written performance document or memorandum to Plaintiff Urban.

56.    Defendant Kiblinger knew on or about April 18, 2007 that Defendant Humphreys intended to terminate the employment of Plaintiff Urban.

57.    On or about April 18, 2007, Defendant Kiblinger was told by Defendant Humphreys to find reasons to criticize Plaintiff Urban and his work performance.

58.    In late April 2007, at the instruction of Defendant Humphreys, Defendant Kiblinger demanded that Plaintiff Urban provide copies of all of his time sheets from 2004 through April 2007.

59.    In late April 2007, at the instruction of Defendant Humphreys, Defendant Kiblinger became abusive towards Plaintiff Urban.

60.    In late April 2007, at the instruction of Defendant Humphreys, Defendant Kiblinger became abusive towards Plaintiff Urban in the hope that Plaintiff Urban would resign from Defendant James F. Humphreys & Associates, L.C.

61.    In early May 2007, at the instruction of Defendant Humphreys, Defendant Kiblinger insisted that Plaintiff Urban file the first set of six Bextra Stevens Johnson Syndrome settlement filings.

62.    Defendant Kiblinger knew that Humphreys terminated Plaintiff Urban's employment so that Defendant Humphreys could avoid sharing in any of the profits of the Monsanto case and the pharmaceuticals cases with Plaintiff Urban.

63.    It is the policy of Defendant JFHA to provide bonuses to attorneys based upon a percentage of the attorneys' fees of the cases that they work on while at the firm.

64.    Defendant Kiblinger has received bonuses from Defendant JFHA based upon a

11

percentage of the attorneys' fees from the cases that she worked on while at the firm.

65.     Defendants Humphreys and Defendant JFHA will likely profit in an enormous

amount, likely in the millions of dollars, due to the hard work and extreme effort engaged

in by Plaintiff Urban on the Monsanto and pharmaceuticals cases.


DATED this 9th day of July, 2007.


Respectfully submitted,


Mark A. Smith
Law Office of Mark A. Smith, LLC
  D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20036
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

12

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

THOMAS F. URBAN II,        )
                           )
              Plaintiff,   )
                           )
v.                         )    CIV. ACTION NO. 2007-CA-003185 B
                           )    Judge Mary A. Terrell
                           )
JAMES F. HUMPHREYS,        )    Next Event: Initial Conference
        et al.             )    August 31, 2007
                           )
                           )
              Defendants.  )
                           )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT CINDY J. KIBLINGER

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

33(a), hereby requests that Defendant Cindy J. Kiblinger ("Kiblinger") answer the

following interrogatories fully, separately, and under oath, within forty-five (45) days of

receipt and serve these Answers on Plaintiff Urban by causing same to be delivered to the

offices of Mark A. Smith, Law Office of Mark A. Smith, LLC, 1785 Massachusetts

Avenue, N.W., Suite 100, Washington, D.C. 20006.

## DEFINITIONS AND INSTRUCTIONS

I.      **DEFINITIONS**

A.      "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

B.      "Defendant" shall refer to Defendant Cindy J. Kiblinger, and, where

applicable, any other person acting on purporting to act on her behalf, employees, and

agents, including any attorney or other representative.

C.    "Other Defendants" in this Set of Interrogatories shall refer to the following other Defendants to this action: James F. Humphreys & Associates, L.C. and James F. Humphreys.

D.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney, agent, or other representative.

E.    "Communications" or "communicate" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

F.    "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, electronic, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, electronic mail message, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, e-mails, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts,

2

sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made. The terms "document" and "documents" shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within he foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the Defendant. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

G. "Relating to" as used in these interrogatories means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

H.    "Identify" (with respect to documents) means to provide the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and/or recipient(s).

I.    "Identify" (with respect to persons) means to provide the person's full name, present or last known address, present or last known telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

J.    "Identify" (with respect to oral communications) means to provide (i) the identity of the speaker and the parties to the communication; (ii) the date of the communication; (iii) the place of the communication; (iv) the substance of the communication; and (v) whether such communication has since been reduced to writing and, if so, identify each document.

K.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

L.    "Person" or "people" when used in these Interrogatories includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

M.    The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto</u> <u>Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

## II.    INSTRUCTIONS

A.    These interrogatories are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.    If you object to any interrogatory based on a claim of privilege, work product, or any other exemption from discovery, state fully the reasons for each objection and answer all portions of the interrogatory to which the claimed exemption does not apply.

C.    These interrogatories are continuing and require supplemental responses as provided for in D.C. Superior Court Rules of Civil Procedure 33(e).

## III.    INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify the person or persons answering these interrogatories as well as all other persons furnishing information in response to these interrogatories.

**INTERROGATORY NO. 2:** Explain in detail each and every reason that Defendant Humphreys told Defendant Kiblinger that Humphreys terminated the employment of Plaintiff Urban on May 4, 2007.

**INTERROGATORY NO. 3:**  Identify each person with whom Defendant Kiblinger discussed the decision to terminate the employment of Plaintiff Urban and identify the oral or written communication by which this discussion occurred.

**INTERROGATORY NO. 4:**  Explain in detail each and every discussion that Defendant Kiblinger had with Defendant Humphreys on or about April 18, 2007 and any time thereafter, relating to Plaintiff Urban's employment with Defendant James F. Humphreys & Associates, L.C. ("JFHA").

**INTERROGATORY NO. 5:**  Identify in detail all steps taken by Defendant Kiblinger related to Plaintiff Urban's employment in response to her discussion with Defendant Humphreys on or about April 18, 2007, relating to Plaintiff Urban's employment with Defendant James F. Humphreys & Associates, L.C. ("JFHA").

**INTERROGATORY NO. 6:**  Identify the date on which Defendant Kiblinger knew that Defendant Humphreys decided to terminate the employment of Plaintiff Urban.

**INTERROGATORY NO. 7:**  Identify each raise received by Defendant Kiblinger by Defendant JFHA from 2000 to the present, providing the amount of the raise, and explain in detail the reason that Defendant Kiblinger received the raise.

**INTERROGATORY NO. 8:**  Identify each bonus or profit sharing payment received by Defendant Kiblinger from 2000 to the present, providing the amount of the bonus or payment, and the explain in detail the reason that Defendant Kiblinger received the bonus or payment.

**INTERROGATORY NO. 9:**  Explain in detail all instructions that Defendant Humphreys gave Defendant Kiblinger regarding Plaintiff Urban, his employment, and work performance from March 30, 2007 until May 4, 2007.

**INTERROGATORY NO. 10:**  Identify each and every person who had any complaint regarding Plaintiff Urban's work performance from January 1, 2007 until May 4, 2007, and the substance of that complaint.

**INTERROGATORY NO. 11:**  Explain in detail the policy by which attorneys at Defendant JFHA are compensated including any system or basis on which they are provided with bonuses.

6

**INTERROGATORY NO. 12**: Explain in detail each and every benefit to the Monsanto case clients of Defendant JFHA of replacing Plaintiff Urban with attorneys Ray Lovejoy and Craig Giffin on the Monsanto case.

DATED this 24th day of July, 2007.

Respectfully submitted,

Mark A. Smith
Law Office of Mark A. Smith, LLC
  D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20006
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| THOMAS F. URBAN II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2007-CA-003185 B |
| | ) | Judge Mary A. Terrell |
| | ) | |
| JAMES F. HUMPHREYS, | ) | Next Event: Initial Conference |
| et al. | ) | August 31, 2007 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
## TO DEFENDANT CINDY J. KIBLINGER

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule 34(a), hereby requests that Defendant Cindy J. Kiblinger ("Kiblinger") produce the following requested documents within forty-five (45) days of receipt to Plaintiff Urban by causing same to be delivered to the offices of Mark A. Smith, Law Office of Mark A. Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20006.

## DEFINITIONS AND INSTRUCTIONS

A.    These requests for production are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.    "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.    "Defendant" shall refer to Defendant Cindy J. Kiblinger, and, where applicable, any other person acting on purporting to act on her behalf, employees, and agents, including any attorney or other representative.

D.    "Other Defendants" in this Set of Requests shall refer to the following other Defendants to this action: James F. Humphreys & Associates, L.C. and James F. Humphreys.

E.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney or other representative.

F.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

G.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

H.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, or otherwise.

I.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic,

2

mechanical, electrical, or other recording or transcription thereof which is a substantially

verbatim recital of an oral statement made by the person making it and

contemporaneously recorded.

J.      "Document" and "documents" shall be used in their broadest sense and

shall mean and include all written, printed, typed, recorded, or graphic matter of every

kind and description, both originals and copies and all attachments and appendices

thereto.  Without limiting the foregoing, the terms "document" and "documents" shall

include all agreements, contracts, communications, correspondence, letters, telegrams,

telexes, messages, memoranda, records, reports, books, summaries, or other records of

telephone conversations or interview, summaries or other records of personal

conversations, minutes or summaries or other records of personal meetings and

conferences, summaries or other records of meetings and conferences, summaries,

dairies, dairy entries, calendars, appointment books, time records, instructions, work

assignments, visitor records, forecasts, statistical data, statistical statements, work sheets,

work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks,

telephone bills or records, bills, statements records of obligation and expenditure,

invoices, lists, journals, advertising, recommendations, files, printouts, compilations,

tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit,

envelopes or folders or similar containers, voucher analyses, studies, surveys,

transcription or hearings, transcripts of testimony, expense reports, microfilm,

microfiche, articles, speeches, tape or disc recordings, sound recordings, video

recordings, film, tapes, photographs, punch cards, programs, data compilations from

which information can be obtained (including matter used in data processing), and other

3

printed, written, handwritten, typewritten, recorded, stenographic, computer-generated

computer sorted, or electronically sorted matter, however and by whomever produced,

prepared, reproduced, disseminated, or made. The terms "document" and "documents"

shall include all copies of documents by whatever means made, except that where a

documents is identified or produced, identical copies thereof which do not contain any

markings, additions, or deletions different from the original need not be separately

produced. "Document" and "documents" means and includes all matter within he

foregoing description that is in the possession, control or custody of the Defendant or in

the possession, control or custody of any attorney for the Defendant. Without limiting

the term "control," a document is deemed to be within your control if you have

ownership, possession, or custody of the document, or the right to secure the document or

copy thereof from any person or public or private entity having physical possession

thereof.

K.     "Relating to" as used in these requests means and includes pertaining to,

recording, evidencing, containing, setting forth, reflecting, showing, disclosing,

describing, explaining, summarizing, constituting, concerning or referring to, whether

directly or indirectly.

L.     "Injury" or "injuries" as used herein includes not only physical or mental

injury, but economic or financial injury as well.

M.     The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto</u>

<u>Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam

County, West Virginia, and, where appropriate, any related case including the Solutia

4

bankruptcy and the personal injury class action filed against Monsanto and others in the

Circuit Court of Kanawha County, West Virginia.

N.    If you object to production of any document based on a claim of privilege,

work product or any other exemption from discovery, please provide a privilege log

describing in detail the document and the reasons for each objection.

## REQUESTS FOR PRODUCTION

1.    All documents that allegedly support Defendant Humphreys' decision to terminate the employment of Plaintiff Urban on May 4, 2007.

2.    All contemporaneous notes or electronic mail messages related to any complaints that Defendant Humphreys or Defendant Kiblinger had regarding Plaintiff Urban.

3.    All documents related to any potential settlement of the Monsanto case.

4.    All documents that identify any raise or bonus provided to any attorney employed by Defendant James F. Humphreys & Associates, L.C. ("JFHA") from 2000 to the present.

5.    All documents related to the potential settlement of any Vioxx, Celebrex or Bextra case.

6.    All documents related to any prediction or estimate of the potential settlement value of or any attorneys fees that may be earned from the Monsanto case.

7.    All documents related to any prediction or estimate of the potential settlement value of or any attorneys fees that may be earned from the Vioxx, Celebrex, and/or Bextra cases.

8.    All documents related to any potential sale of or offer to sell Defendant James F. Humphreys & Associates, L.C. or any assets of Defendant JFHA by Defendant Humphreys to any potential purchaser.

9.    All documents related to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy any part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

10. All accounting documents related to the operation of Defendant JFHA from 2000 to the present, including but not limited to all documents reflecting any attorneys' fees earned by the firm.

11. All documents that describe the net worth of Defendant Kiblinger on or around May 4, 2007.

12. All documents regarding Thomas F. Urban II's performance or employment.

13. Any memorandum, whether on paper or electronic, regarding Plaintiff Thomas F. Urban II written by Defendant Kiblinger.

14. All documents regarding any attempt to convince Plaintiff Urban to resign from Defendant JFHA.

15. All documents relating to any conversations with Plaintiff Urban.

16. All documents related to efforts to obtain as much information from Plaintiff Urban prior to the termination of Plaintiff Urban's employment.

17. All notes from the meeting on or about April 18, 2007 at which Plaintiff Urban's employment with Defendant JFHA was discussed.

18. All documents regarding any attempt to find excuses to terminate the employment of Plaintiff Urban.

19. All documents that reflect any discussion of Defendant Humphrey's termination of the employment of Plaintiff Urban or Plaintiff Urban's departure from Defendant JFHA, including but not limited to any correspondence with any client of Defendant JFHA and any court.

20. All documents regarding the payment of bonuses by Defendant JFHA based upon any formula or for any reason.

21. All electronic mail messages relating to Plaintiff Urban's departure from Defendant JFHA.

22. All documents supplied by Defendant, or anyone acting on Defendant's behalf, to any expert who is expected to testify at the trial of this case.

23. All documents that will be relied upon as a basis for the opinions of any expert who is expected to testify at the trial of this case.

24. A current curriculum vitae for each expert witness identified in Defendants' Rule 26(b)(4) statement.

25. All documents relating to each statement, action, or admission against interest, or declaration against interest which Defendants contend was made by Plaintiff, or any person whom Defendant alleges to be Plaintiff's agent, servant, and/or employee.

26. All documents referring or relating to any communication between Defendant and the Plaintiff, including but not limited to any electronic documents that reflect such discussions.

27. All documents referred to or identified in Defendant's responses to the interrogatories propounded to Defendants by the Plaintiff.

28. All documents referred to or identified in Defendant's responses to the requests for admissions propounded to Defendants by the Plaintiff.

29. All documents relating to any conversations either individual Defendant has had with any individual, other than Defendants' own counsel, concerning facts and/or allegations noted in this lawsuit, i.e. Plaintiff's complaint or Defendant's defenses.

30. Each picture, diagram, document, recording (electronic, photographic, or written), or other object (real evidence) which is known to you and which relates to the matters alleged in Plaintiff's complaint herein or which you contend support any of the defenses to the claims in Plaintiff's complaint.

31. All documents relating to any statement, oral, written, or recorded, given to you, your agents, or attorneys concerning the matters alleged in the Complaint or in your answer herein or which may otherwise relate to any defense upon which you intend to rely.

32. All documents upon which Defendants intend to rely in proving any allegation or denial contained in its Answer and/or which Defendants intend to offer into evidence as exhibits or use as demonstrative aids at the trial of this lawsuit.

33. All statements, memoranda, notes, calendars, diaries, reports, photographs, or other materials that are in any way related to the Defendant's denials or allegations within its Answer to the Complaint.

34. All documents not previously requested which relate to the claims in this case.

35. All documents not previously requested which you contend support any other aspect of your defense in this case.

36. All documents not previously requested that contradict any aspect of your defense in this case.

37.    All documents related to a meeting on or about April 18, 2007, at which Plaintiff Urban's employment with Defendant JFHA was discussed.

38.    All documents related to any raise or bonus that Defendant Kiblinger has received since 2000.


DATED this ___ day of July, 2007.


                                        Respectfully submitted,


                                        _____
                                        Mark A. Smith
                                        Law Office of Mark A. Smith, LLC
                                          D.C. Bar No. 439116
                                        1785 Massachusetts Avenue, N.W.,
                                        Suite 100
                                        Washington, D.C. 20006
                                        (202) 776-0022
                                        (202) 756-7516 (facsimile)

                                        Attorney for Plaintiff Thomas F. Urban II

## CERTIFICATE OF SERVICE

I I hereby certify that on this 2nd day of July, 2007, I caused a true and correct copy of the following: (1) Amended Complaint, (2) First Set of Interrogatories to each of the specifically named Defendants, (3) First Set of Production of Documents to each of the specifically named Defendants., and (4) First Set of Request for Admissions to each of the specifically named Defendants, to be delivered by Hand or Certified Mail, depending on the circumstances:

JAMES F. HUMPHREYS
3030 K Street, N.W.
Penthouse Apartment 301
Washington, D.C. 20007

CINDY J. KIBLINGER
105 Broncroft Place
Daniels, West Virginia 25832

JAMES F. HUMPHREYS & ASSOCIATES, L.C.
1200 New Hampshire Avenue, NW
Suite 510
Washington, DC 20036

Mark A. Smith



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

THOMAS F URBAN II
    Vs.                         C.A. No.      2007 CA 003185 B
JAMES F HUMPHREYS

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MARY A TERRELL
Date:  May 7, 2007
Initial Conference: 9:15 am, Friday, August 31, 2007
Location:  Courtroom 219
         500 Indiana Avenue N.W.
         WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| Thomas F. Urban II | |
| *Plaintiff* | 0003185-07 |
| **VS.** | Civil Action No. |
| James F. Humphreys | |
| *Defendant* | |

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Thomas F. Urban II | |
| Name of Plaintiff's Attorney | |
| 2867 S. Abingdon St. | By _(signature)_ |
| Address | Deputy Clerk |
| Arlington, Virginia 22206 | |
| (703) 861-5235 | Date May 7, 2007 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 92

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **THOMAS F. URBAN II,**<br>2867 S. Abingdon Street,<br>Arlington, Virginia 22206, | )<br>)<br>) |
|            **Plaintiff,** | )<br>)<br>) |

0003185-07

**v.**                                              )    **CIVIL ACTION NO.**

RECEIVED
Civil Clerk's Office
MAY 0 7 2007
Superior Court of the
District of Columbia
Washington, D.C.

**JAMES F. HUMPHREYS,**
3030 K Street, N.W.,
Penthouse Apartment 3B
Washington, D.C. 20007,

**JURY DEMAND**

**CINDY J. KIBLINGER,**
105 Broncroft Place,
Daniels, West Virginia 25832,

    and

**JAMES F. HUMPHREYS & ASSOCIATES, L.C.**
500 Virginia Street East, Suite 800,
Charleston, West Virginia 25301,

          **Defendants.**

**PLAINTIFF'S COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL**
**INFLICTION OF EMOTIONAL DISTRESS, DAMAGES,**
**AND DECLARATORY RELIEF**

**PRELIMINARY STATEMENT**

This is an action for breach of contract, intentional infliction of emotional distress,

declaratory and injunctive relief, and damages brought by Plaintiff, THOMAS F. URBAN II,

against JAMES F. HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS &

ASSOCIATES, L.C.  Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred on this Court pursuant to 11 D.C. § 921. The vast majority of the events complained of in this complaint, including Plaintiffs hiring and firing, as well as the numerous promises and tortuous conduct against Plaintiff by Defendant Humphreys occurred in the District of Columbia.

2.  Venue in the District of Columbia is appropriate because all three Defendants have directed their dealings and engaged in the breach of contract and/or the intentional infliction of emotional distress at Plaintiff, who was working in Washington, D.C. Plaintiff Urban was hired in Washington, D.C. to work in the Washington, D.C. office. Each Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.  Plaintiff, THOMAS F. URBAN II (hereinafter, "URBAN"), is a Virginia resident licensed to practice law in Virginia and the District of Columbia, with a residence at 2867 S. Abingdon Street, Arlington, Virginia 22206.

4.  Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult individual residing in Washington, D.C. and licensed to practice law in the District of Columbia. Mr. Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 3B, Washington, D.C. 20007. His primary office is at 1200 New Hampshire Avenue, N.W., Suite 510, Washington, D.C. 20036.

5.  Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West Virginia. Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft Place, Daniels, West Virginia 25832. Her office is at 500 Virginia Street East, Suite

2

800, Charleston, West Virginia 25301, but she also supervised Plaintiff Urban's work in Washington, D.C.

6.    Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a business with its principal office at 500 Virginia Street East, Suite 800, Charleston, West Virginia 25301, and an office at 1200 New Hampshire Avenue, N.W., Suite 510, Washington, D.C. 20036. Defendant Humphreys is the sole owner of the Firm. Defendant Kiblinger is the supervising attorney of the Firm.

## FACTS

7.    Plaintiff Urban was hired by Defendants Humphreys and the Firm effective July 2004. During the negotiations culminating in Plaintiff Urban's employment with the Firm, certain representations were made to him, including but not limited to the fact that Defendant Humphreys would hire staff in the Washington, D.C. office of the Firm, that Plaintiff would be eligible for yearly raises and bonuses, and that Plaintiff would be provided with adequate resources in order to properly litigate the cases to which he was assigned. Plaintiff Urban was promised that Defendant Humphreys and the Firm had adequate financial resources to litigate cases in the manner in which Plaintiff Urban was accustomed to litigating cases at large defense firms.

8.    When Plaintiff was hired, he was given an initial salary of $160,000.00 per year, a salary significantly below the appropriate salary in the Washington, D.C. area for an attorney of Plaintiff Urban's education, skill, and experience. Plaintiff Urban agreed to this lower salary based upon his reliance on promises of bonuses and raises by Defendant Humphreys.

3

9.    Soon after being hired by Defendant Humphreys and joining the Firm, Plaintiff Urban

was assigned to work on an environmental toxic tort class action against the Monsanto

Company and other defendants involving contamination from a plant in Nitro, West

Virginia, as well as assigned to handle all of the pharmaceutical cases being handled by

the Firm. Prior to these assignments, the Firm had virtually no experience with large

environmental toxic tort cases or pharmaceuticals cases. As Defendant Humphreys

knew, these cases would take several years until they were resolved and would bring

money into the Firm. Conservatively, the Monsanto case was the largest single case

that the firm had ever handled and was "the most important case in the firm" during the

time of Plaintiff Urban's employment by Defendant Humphreys' own admission.

10.    Despite promises by Defendant Humphreys that staff in D.C. would be hired, once

Plaintiff Urban joined the Firm, Defendant Humphreys insisted that all of Plaintiff

Urban's staff be hired and work in the West Virginia office, purportedly as a cost-

savings matter. The little staff that was hired in the D.C. office, one receptionist

position, was the source of constant turn-over due to Defendant Humphrey's

dissatisfaction with the occupants of that position.

11.    After five months at the firm, Defendant Humphreys and the Firm raised Plaintiffs'

salary $10,000.00, for a total yearly salary of $170,000.00, as of January 2005.

Defendant Humphreys stated that Plaintiff Urban was doing a terrific job with the cases

to which he was assigned.

12.    Throughout 2005 and 2006, Plaintiff Urban worked substantial hours, including

significant travel and time spent in West Virginia. Plaintiff Urban was the only attorney

assigned to over three thousand pharamaceutical intakes and filed over five hundred

4

pharmaceutical cases, despite repeated requests to Defendant Humphreys for more attorney assistance. In addition, Plaintiff Urban was essentially the only Firm attorney assigned to the major environmental toxic tort class action concerning a Monsanto plant in Nitro, West Virginia. This case also required substantial work and significant travel. Again, Plaintiff Urban repeatedly sought that Defendant Humphreys assign additional attorney assistance with this case, a request that was consistently rejected. In fact, in the summer of 2005, Defendant Humphreys fired the only attorney who had provided any real modicum of assistance to Plaintiff Urban on the Monsanto case.

13.    Similarly, Plaintiff Urban's requests that he be provided with staff in the Washington, D.C. office were rejected by Defendant Humphreys. In fact, for most of 2006, the Washington, D.C. office did not have a receptionist and Plaintiff Urban was required to interrupt his work when in the office to answer the telephone and greet visitors for Defendant Humphreys.

14.    At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff Urban with any raise or bonus. Defendant Humphreys assured Plaintiff Urban that he was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff Urban had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff Urban that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff Urban brought income to the Firm that Plaintiff Urban "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff Urban "rich" when the cases were settled or otherwise resolved.

5

15.   At the end of 2006, Defendant Humphreys and the Firm again failed to provide Plaintiff

Urban with any raise or bonus.  Defendant Humphreys assured Plaintiff Urban that he

was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been

assigned had not yet brought revenue to the firm.  Defendant Humphreys acknowledged

the long hours that Plaintiff Urban had been working, including substantial overnight

travel to West Virginia.  Defendant Humphreys assured Plaintiff Urban that Defendant

Humphreys would make sure that when the cases being worked up by Plaintiff Urban

brought income to the Firm that Plaintiff Urban would be compensated with a

significant bonus at that time.

16.   On March 30, 2007, Plaintiff Urban and Defendant Humphreys attended the first

settlement meeting with the Defendants in the Monsanto case involving Nitro, West

Virginia.  The meeting went so well that Defendant Humphreys agreed to a ninety day

stay of all proceedings in the case in order that a settlement could be worked out.

17.   Similarly, the first batch of six pharmaceuticals cases were sent to a defendant on May

3, 2007, after an agreement by that defendant that a settlement offer would be made on

these cases.

18.   During the weeks after the first announcements of a possible settlement and intensifying

after March 30, 2007, Defendant Humphreys and Defendant Kiblinger engaged in a

series of abusive e-mail correspondence, telephone calls, and conversations directed at

Plaintiff Urban.

19.   On May 4, 2007, while Plaintiff Urban was home sick, Defendant Humphreys called

him at home in order to terminate Plaintiff Urban's employment with the Firm.

Although Defendant Humphreys attempted to set forth various pretextual reasons for

Plaintiff Urban's firing, it is clear that Plaintiff Urban was fired so that Defendant

Humphreys could avoid sharing in any of the profits of the Monsanto case and the

pharmaceuticals cases with Plaintiff Urban.

## COUNT I

## BREACH OF AGREEMENT

20.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 19 as if
they were fully set forth.

21.    Defendant Humphreys, both on behalf of himself and on behalf of the Defendant Firm,
made certain representation about compensation, delayed compensation, bonuses,
sharing in profits, and raises, as described above.

22.    Plaintiff Urban relied upon these promises and in reliance on these promises, continued
to work for the Defendant Firm despite the failure of Defendant Humphreys and the
Firm to provide Plaintiff Urban with promised raises and bonuses.  Plaintiff Urban
relied upon Defendant Humphreys' promises of substantial compensation once the
cases on which Plaintiff Urban developed and litigated reached resolution.

23.    Defendant Humphreys fired Plaintiff Urban without fulfilling any of these promises.

24.    Defendants Humphreys and the Firm will likely profit in an enormous amount, likely in
the millions of dollars, due to the hard work and extreme effort engaged in by Plaintiff
Urban on the Monsanto and pharmaceuticals cases based upon these promises.

25.    Plaintiff Urban has been significantly damaged monetarily because of these breaches of
the promises made by Defendants Humphreys and the Firm.

WHEREFORE, Plaintiff respectfully requests the following relief against the

Defendants:

7

A.    That a judgment be entered against Defendant Humphreys and the Firm and in favor of Plaintiff Urban in the amount that the fact-finder determines that Plaintiff Urban has been injured by these Defendants' breach of contract;

B.    That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.    That such other and further relief be granted as this Court may deem just and proper.

## COUNT II

## DECLARATORY JUDGMENT –

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

26.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 25 as if they were fully set forth.

27.    Defendant Humphreys and the Firm made promises to Plaintiff Urban that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff Urban "rich."

28.    Defendants Humphreys and the Firm have not honored these promises. Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

29.    Plaintiff Urban has insisted that he is entitled to a percentage of the attorneys' fee for each of the cases on which he worked, including but not limited to the Monsanto case.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants Humphreys and the Firm:

8

A.     That a declaratory judgment be entered against Defendant Humphreys

and the Firm in favor of Plaintiff Urban that he be provided with no less

than twenty-five (25) per cent of the attorneys' fees earned by Defendant

Firm or any successor or assign for the cases on which Plaintiff Urban

worked, including but not limited to the Monsanto case and all

pharmaceuticals cases filed by Plaintiff Urban while at the Firm;

B.     That judgment be entered for the costs of this suit and reasonable

attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.     That such other and further relief be granted as this Court may deem just

and proper.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.     Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 23 as if

they were fully set forth.

31.     Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves

and the Firm, engaged in a series of abusive interactions with Plaintiff Urban.  It is

likely that these interactions were intended to encourage Plaintiff Urban to seek other

employment and forego the promised compensation to which Plaintiff Urban was due.

32.     As described above, this abusive activity was so outrageous, without justification or

excuse, as to be beyond the bounds of decency.

33.     This behavior was calculated to and did cause Plaintiff Urban harmful physical

consequences which required Plaintiff Urban to seek medical help.

9

34.     Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be held liable for the tort of intentional infliction of emotional distress or outrage.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants Humphreys, Kiblinger, and the Firm:

A.     That a judgment be entered against all three Defendants in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' intentional infliction of emotional distress;

B.     That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.     That such other and further relief be granted as this Court may deem just and proper.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the Defendants:

A.     That a judgment be entered against Defendants Humphreys and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' breach of contract;

B.     That a declaratory judgment be entered declaring that Plaintiff is entitled to no less than twenty-five (25) percent of any attorneys' fee that Defendants Humphreys and/or the Firm, their assigns, or successors obtain as a result of any of the matters on which Plaintiff worked during his employment with Defendant Firm;

10

C.  That a judgment be entered against Defendants Humphreys, Kiblinger, and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' intentional infliction of emotional distress;

D.  That judgment be entered for the costs of this suit and reasonable attorneys' fees against all Defendants and in favor of Plaintiff Urban;

E.  That such other and further relief be granted as this Court may deem just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

DATED this 7th day of May, 2007.

Respectfully submitted,

Thomas F. Urban II
D.C. Bar No. 432127
2867 S. Abingdon St.
Arlington, Virginia 22206
(703) 861-5235
(703) 931-0206 (facsimile)
tfuii@yahoo.com

and

James H. Falk, Jr.
10101 Colvin Run Rd
Great Falls, Virginia 22066
(703) 928-1600
(703) 759-0859 (facsimile)
sportlaw@hotmail.com

Attorneys for Plaintiff

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| THOMAS F. URBAN II, | ) |
| 2867 S. Abingdon Street, | ) |
| Arlington, Virginia 22206 | ) |
| | ) |
|                Plaintiff, | ) |
| | ) |
| v. | )   C.A. NO. 2007 CA 003185 B |
| | ) |
| | ) |
| JAMES F. HUMPHREYS | )     JURY DEMAND |
| 3030 K Street, N.W. | ) |
| Penthouse Apartment 301 | ) |
| Washington, D.C. 20007 | ) |
| | ) |
| CINDY J. KIBLINGER | ) |
| 105 Broncroft Place | ) |
| Daniels, West Virginia 25832 | ) |
| | ) |
|      and | ) |
| | ) |
| JAMES F. HUMPHREYS & ASSOCIATES, L.C. | ) |
| 1200 New Hampshire Avenue, NW | ) |
| Suite 510 | ) |
| Washington, DC 20036 | ) |

## AMENDED COMPLAINT

### Preliminary Statement

This is an action for breach of contract, promissory estoppel, unjust enrichment,

quantum meruit, intentional infliction of emotional distress, declaratory and injunctive relief,

and damages. It is brought by Plaintiff, THOMAS F. URBAN II, against JAMES F.

HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS & ASSOCIATES,

L.C. Plaintiff states as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court pursuant to 11 D.C. Code § 921.  The vast majority

of the events presented in this complaint, including Plaintiff's hiring and firing, various

tortious acts against Plaintiff, and the core breach of contract, occurred in the District of

Columbia.

2.    Venue in the District of Columbia is appropriate because the events alleged in this

complaint occurred substantially in the District of Columbia and because the Firm has

offices in the District of Columbia, which is where Plaintiff's office was during his

employment with the Firm.  In addition to these facts, Defendant Humphreys, himself,

has a personal residence in the District of Columbia and a D.C. office in the same suite

where Plaintiff was formerly located.  The Defendants routinely deal with the D.C. office

and engaged in activities there frequently during Plaintiff's period of employment.  Each

Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.    Plaintiff, THOMAS F. URBAN II (hereinafter, "Plaintiff"), is a Virginia resident

licensed to practice law in Virginia and the District of Columbia, with a residence at 2867

S. Abingdon Street, Arlington, Virginia 22206.

4.    Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult residing in

Washington, D.C. and licensed to practice law in the District of Columbia.  Mr.

Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 301,

Washington, D.C. 20007.  His primary office is at 1200 New Hampshire Avenue, N.W.,

Suite 510, Washington, D.C. 20036.

2

5.    Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West

Virginia. Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft

Place, Daniels, West Virginia 25832. Her office is at 500 Virginia Street East, Suite 800,

Charleston, West Virginia 25301. She, however, supervised Plaintiff's work in

Washington, D.C.

6.    Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a business

with an office at 1200 New Hampshire Avenue, N.W. , Suite 510, Washington, D.C.

20036. Defendant Humphreys is the sole owner of the Firm. Defendant Kiblinger is the

supervising attorney of the Firm.

## FACTS

7.    Defendant Humphreys hired Plaintiff to work at his Firm effective July 2004. During the

negotiations that culminated in Plaintiff's employment with the Firm, certain agents of

the Firm, including Defendant Humphreys, made various representations to Plaintiff.

Among such representations were the following: (1) that Defendant Humphreys would

hire staff in the Washington, D.C. office of the Firm; (2) that Plaintiff would be eligible

for yearly raises; (3) that Plaintiff would receive case-related bonuses, and (4) that

Plaintiff would be provided with adequate resources in order properly to litigate the cases

to which he was assigned. Defendant Humphreys promised Plaintiff that the Firm had

adequate financial resources to litigate cases in the manner in which Plaintiff was

accustomed to litigating cases at large defense firms. Plaintiff had been an associate at

the firm of Williams and Connolly for five years and had worked at other large, reputable

defense firms.

3

8.  Defendant Humphreys hired Plaintiff at a starting salary of $160,000.00 per year, an amount significantly below the appropriate salary in the Washington, D.C. area for an attorney of Plaintiff's education, skill, and experience. Plaintiff agreed to this lower salary based upon his reliance on the opportunity for raises and the promises of case-related bonuses.

9.  Soon after Defendant Humphreys had hired Plaintiff and added him to the Firm, Plaintiff was assigned to work on an environmental toxic tort class action against the Monsanto Company, and other defendants, involving contamination from a plant in Nitro, West Virginia. Plaintiff was also assigned a bevy of pharmaceutical cases being handled by the Firm. Prior to these assignments, the Firm had virtually no experience with large environmental toxic tort cases or pharmaceutical cases. As Defendant Humphreys knew, these cases would take several years until they matured to the point that they would bring money into the Firm. Conservatively, the Monsanto case was the largest single case that the firm had ever handled and, according to Defendant Humphreys, was "the most important case in the firm" during the time of Plaintiff's employment.

10. Despite Defendant Humphreys's promises that he would arrange for the hiring of additional staff in D.C., Defendant Humphreys did not do that. Instead, he insisted that all of Plaintiff's staff be hired in West Virginia and work in the West Virginia office, purportedly as a cost-savings matter.

11. As of January 2005, after five months at the firm, Defendant Humphreys and the Firm raised Plaintiffs' salary $10,000.00 to $170,000.00. Defendant Humphreys stated that Plaintiff was doing a terrific job with the cases to which he had been assigned.

4

12.   From late 2004 through April 2007, Plaintiff worked substantial hours, including

significant travel to West Virginia. Plaintiff was the only attorney assigned to over two

thousand pharmaceutical intakes and, himself, filed over four hundred pharmaceutical

cases. Defendant Humphreys ignored Plaintiff's repeated requests for more attorney

assistance. In addition, Plaintiff was essentially the only Firm attorney assigned to

Monsanto case. Indeed, prior to Plaintiff's arrival at the Firm, there was no attorney

handling class action suits. Plaintiff was the chief lawyer at the firm involved in the

filing of the Monsanto case, and he was the one in the Firm responsible for its

management, development, and prosecution. In terms of Humphrey's firm, it was mainly

because of Plaintiff's efforts that the Monsanto suit became the subject of settlement

discussions in March of 2007. For nearly two and a half years, the case required steady,

substantial work and significant travel. Again, Plaintiff repeatedly entreated Defendant

Humphreys to assign additional attorney assistance with this case, but Defendant

Humphreys would not. Indeed, in the summer of 2005, Defendant Humphreys fired the

only attorney who had provided any meaningful assistance to Plaintiff on the Monsanto

case.

13.   Similarly, Defendant Humphreys rejected Plaintiff's requests that he be provided with

staff in the Washington, D.C. office. In fact, for most of 2006, the Washington, D.C.

office did not have a receptionist and Plaintiff was required, in addition to carrying his

considerable attorney work-load, to answer the telephone, field visitors, and run errands

for Defendant Humphreys.

14.   At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff with

any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a

terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases that Plaintiff worked brought income to the Firm, Plaintiff "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff "rich" when the cases were settled or otherwise resolved.

15. At the end of 2006, Defendant Humphreys and the Firm, again, failed to provide Plaintiff with any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys again acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff brought income to the Firm, Plaintiff would be compensated with a significant bonus at that time.

16. Until mid to late 2006, Plaintiff and Defendant Humphreys had a cordial, amicable relationship. This changed when Plaintiff asked Defendant Humphreys to put in writing his oft-repeated promise that Plaintiff would receive substantial bonus money when his cases yielded revenues to the firm.

17. On March 30, 2007, after almost two and a half years of the firm's involvement in class action litigation that had been handled almost exclusively by Plaintiff, Plaintiff and Defendant Humphreys attended the first settlement meeting with the defendants in the Monsanto case. The meeting went well for Defendant Humphreys and the Firm, and

6

Defendant Humphreys agreed to a ninety-day stay of all proceedings in the case in order that a settlement could be worked out.

18. Similarly, Plaintiff had the first batch of six pharmaceuticals cases sent to Pfizer on or about May 3, 2007, after having earlier negotiated an agreement with that defendant, which strongly promoted a settlement-offer being received to resolve those cases.

19. Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff. The expected sum is in the millions, perhaps tens-of-millions, of dollars. If realized, these sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and the pharmaceutical cases.

20. During the weeks after the first announcement of a possible settlement in the Monsanto case, Defendant Humphreys and Defendant Kiblinger engaged in a series of harassing e-mail correspondences, telephone calls, and conversations directed at Plaintiff.

21. On or about May 4, 2007, while Plaintiff was home sick, and within one month of the death of Plaintiff's mother and six months after the sudden death of his father, Defendant Humphreys called Plaintiff at home in order to terminate Plaintiff's employment with the Firm. Although Defendant Humphreys attempted to set forth various pretextual reasons for Plaintiff's firing, reasonable review of the evidence will lead to the conclusion that Plaintiff was fired so that Defendant Humphreys could avoid according Plaintiff an appropriate share of the profits from the settlement of the Monsanto case and the pharmaceuticals cases.

## COUNT I

## BREACH OF CONTRACT

7

22.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

23.    Plaintiff made clear, through various statements that he made to Defendant Humphreys, that, consistent with his level of experience, his considerable contribution to the development of the relevant cases, and in accord with the common patterns of compensation in the Plaintiffs bar of the legal practice, he desired and expected much greater compensation for his work than his base salary represented.

24.    Defendant Humphreys recognized Plaintiff's expectation and responded to it by offering him, instead of a considerably higher salary, the prospect of participating, in the form of bonuses, in proceeds from cases he had work on while at the firm.  Plaintiff accepted Defendant Humphreys's offer.  In consideration he went without the higher salary or non-case related bonuses and continued to work on the cases for the comparatively modest salary he was receiving.

25.    Defendant Humphreys fired Plaintiff to avoid having to fulfill the terms of this contract, which he knew would in all probability prove quite lucrative to Plaintiff.

26.    Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff.  The expected sum is in the millions, perhaps tens-of-millions, of dollars.  These sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and pharmaceutical cases.

27.    Plaintiff has been significantly damaged monetarily because of Defendants' breach of this contract.

**COUNT II**

8

## PROMISSORY ESTOPPEL

28. Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

29. Defendant Humphreys promised Plaintiff that he would receive a bonus when each case that Plaintiff had been working yielded revenues for the Firm.

30. Plaintiff continued working on the Monsanto case and the pharmaceutical cases, despite not receiving annual raises or any bonus, because of his reliance on Defendant Humphreys's promise.

31. To the extent that the Firm receives funds as a result of those cases, Plaintiff will have relied on Defendant's promise to his detriment.

## COUNT III

## UNJUST ENRICHMENT

32. Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

33. Plaintiff's extended hard work and professional input, direction, development, and judgment in connection with the Monsanto case and the pharmaceutical cases, conferred a benefit upon Defendant Humphreys and the Firm worth a percentage of whatever turns out to be the settlement amount of those cases.

34. Defendant Humphrey and the Firm had an appreciation and knowledge of the benefit conferred by Plaintiff.

35. Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon them by Plaintiff.

9

36.    Under the circumstances, it is inequitable for Defendants to retain the benefits conferred

upon them by Plaintiff without payment to Plaintiff of the fair value, under the

circumstances, of such benefits.

## COUNT IV

## QUANTUM MERUIT

37.    Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations

contained in Paragraphs 1 through 21 as if they were fully set forth.

38.    Plaintiff conferred a benefit upon Defendant Humphreys and the Firm in the form of

working, developing, and litigating the Monsanto and pharmaceutical cases to the point

that they were ripe for settlement.

39.    Defendant Humphreys and the Firm had an appreciation and knowledge of the benefit

conferred by Plaintiff.

40.    Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon

them by Plaintiff's considerable efforts, which resulted in the Monsanto case and the

pharmaceutical cases leading to potentially very lucrative settlement discussions.

41.    Under the circumstances, it is inequitable for Defendant Humphreys and the Firm to

retain the benefits conferred upon them by Plaintiff without payment to Plaintiff of the

fair value of such benefits.

## COUNT V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if

they were fully set forth.

10

43.   Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves and the Firm, engaged in a series of abusive interactions with Plaintiff.  It is probable that these interactions were intended to encourage Plaintiff to seek other employment and forego the promised compensation to which Plaintiff was due.

44.   As described above, this abusive activity was so outrageous, without justification or excuse, as to be beyond the bounds of decency.

45.   This behavior could foreseeably have caused, and did cause, Plaintiff harmful, physical consequences, which required Plaintiff to seek medical help.

46.   Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be held liable for the tort of intentional infliction of emotional distress.

## COUNT VI

## DECLARATORY JUDGMENT

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

47.   Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

48.   Defendant Humphreys and the Firm made promises to Plaintiff that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff "rich."

49.   Defendants Humphreys and the Firm have not honored these promises.  Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

11

50.    Plaintiff has insisted that he is entitled to a percentage of the attorneys' fee for each of the

cases on which he worked, including but not limited to the Monsanto case.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the

Defendants:

A.  That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff has been injured by

Defendants' breach of contract;

B.  That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled based

upon the doctrine of promissory estoppel;

C.  That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled to based

upon the doctrine of unjust enrichment;

D.  That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff is entitled to based

upon the doctrine of quantum meruit;

E.  That a judgment be entered against Defendants Humphreys, Kiblinger, and

the Firm in the amount that the fact-finder determines that Plaintiff has been

injured by Defendants' intentional infliction of emotional distress;

F.  That a declaratory judgment be entered declaring that Plaintiff is entitled to a

percentage of any attorneys' fee that Defendants Humphreys and/or the

12

Firm, their assigns, or successors obtain as a result of any of the matters on which Plaintiff worked during his employment with Defendant Firm;

G. That judgment be entered for the costs of this suit and reasonable attorneys' fees against all Defendants and in favor of Plaintiff;

H. That such other and further relief be granted as this Court may deem just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

DATED this 2nd day of July, 2007.

Respectfully submitted,

Mark A. Smith
D.C. Bar No. 439116
1785 Massachusetts NW
Suite 100.
Washington, DC 20036
(202) 776-0022
(202) 756-7516 (facsimile)
marksmith@masmithlaw.com
masmithlaw.com
Attorney for Plaintiff

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| THOMAS F. URBAN II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACTION NO. 2007-CA-003185 B |
| | ) Judge Mary A. Terrell |
| | ) |
| JAMES F. HUMPHREYS, | ) Next Event: Initial Conference |
| et al. | ) August 31, 2007 |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS
## TO DEFENDANT JAMES F. HUMPHREYS

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

36(a), hereby requests that Defendant James F. Humphreys ("Humphreys") appropriately

answer, separately, fully in writing, and under oath, each of the following requests for

admission and are further requested to serve your Answer on Plaintiff Urban, within

forty-five (45) days from the date of service of these requests for admission, by causing

same to be delivered to the offices of Mark A. Smith, Law Office of Mark A. Smith,

LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20006.

You are further requested to supplement your Answers to these requests for

admissions not less than thirty (30) days prior to the beginning of trial if you later obtain

information upon the basis of which:

1.      You know that the Answer to any request for admission was incorrect when
made; or

2.    You know that the Answer to any such request for admission though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment or misrepresentation.

If you object to any request for admission based on a claim of privilege, work product or any other exemption from discovery, state fully the reasons for each objection and answer all portions of the requests for admission to which the claimed exemption does not apply.

Unless the request can be completely admitted, Plaintiff Urban requests that Defendant James F. Humphreys admit so much of the request as is true and qualify or deny only the remainder.

For each of the requests for admission above, unless your response has been an unqualified admission, set forth in detail the evidence upon which you expect to rely to contest the requested admission.

## DEFINITIONS AND INSTRUCTIONS

A.    These requests for admission are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.    "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.    "Defendant" shall refer to Defendant James F. Humphreys., and, where applicable, any other person acting on purporting to act on his behalf, employees, and agents, including any attorney or other representative.

2

D.    "Other Defendants" in this Set of Requests shall refer to the following

other Defendants to this action: James F. Humphreys & Associates, L.C. and Cindy J.

Kiblinger.

E.    "You" and "your" shall refer to Defendant, as well as any other persons

acting or purporting to act on behalf of Defendants, including any attorney or other

representative.

F.    As used herein, the words "and" and "or" shall be construed either

conjunctively or disjunctively as required by the context to bring within the scope of

these requests any document or information that might be deemed outside its scope by

another construction.

G.    "Person" or "people" when used in this Request includes human beings,

corporations, partnerships, associations, firm, proprietorship, joint ventures,

governmental agencies (federal, state or local), or any other legal or business

organization.

H.    "Communication" shall mean and include every manner or means of

disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal,

or exchange of information, whether face-to-face, by telephone, mail, personal delivery,

or otherwise.

I.    "Statement" means and includes any written or graphic statement signed

or otherwise adopted or approved by the users in making it, any stenographic,

mechanical, electrical, or other recording or transcription thereof which is a substantially

verbatim recital of an oral statement made by the person making it and

contemporaneously recorded.

3

J.    "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, dairy entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made.  The terms "document" and "documents"

4

shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within he foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the Defendant. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

K.     "Relating to" as used in these requests means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

L.     "Injury" or "injuries" as used herein includes not only physical or mental injury, but economic or financial injury as well.

M.     The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

N.    If you object to any of these requests for admission based on a claim of

privilege, work product or any other exemption from discovery, please provide a

privilege log describing in detail the reasons for each objection.

## REQUESTS FOR ADMISSION

1.    Plaintiff Thomas F. Urban II was hired by Defendant James F. Humphreys to

work for Defendant James F. Humphreys & Associates, L.C. effective July 2004.

2.    John M. Mason interviewed Plaintiff Thomas F. Urban II prior to Urban's hiring

by Defendant Humphreys.

3.    John M. Mason was the agent of Defendant James F. Humphreys & Associates,

L.C. ("JFHA") when he interviewed Plaintiff Urban.

4.    John M. Mason was an employee of Defendant JFHA when he interviewed

Plaintiff Urban.

5.    Plaintiff Urban was hired by Defendant Humphreys at a salary of $160,000 per

year.

6.    Plaintiff Urban was given a $10,000 raise by Defendant Humphreys effective

January 2005.

7.    Plaintiff Urban's salary at Defendant JFHA was $170,000 per year effective

January 2005.

8.    Plaintiff Urban was hired by Defendant Humphreys in part to develop new types

of cases not previously handled by Defendant JFHA.

9.    Plaintiff Urban was hired by Defendant Humphreys in part to handle large

environmental toxic tort cases.

6

10.     Defendant Humphreys promised Plaintiff Urban that Humphreys would share the profits of the cases on which Plaintiff Urban worked while at Defendant JFHA.

11.     Plaintiff Urban did not receive any raise in salary by Defendant JFHA at any time after January 2005.

12.     Plaintiff Urban did not receive any bonuses from Defendant JFHA at any time during his employment at Defendant JFHA.

13.     Plaintiff Urban did not receive any share of any profits from Defendant JFHA at any time during his employment at Defendant JFHA.

14.     After Plaintiff Urban did not receive any raise or bonus at the end of 2005, Defendant Humphreys assured Urban that he would receive a substantial bonus after the Monsanto case was resolved successfully.

15.     After Plaintiff Urban did not receive any raise or bonus at the end of 2005, Defendant Humphreys assured Urban that Humphreys would make Urban "rich" after the Monsanto case was resolved successfully.

16.     After Plaintiff Urban did not receive any raise or bonus at the end of 2005, Defendant Humphreys assured Urban that he would receive a bonus if the Vioxx, Celebrex, and Bextra cases were resolved successfully.

17.     After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant Humphreys assured Urban that he would receive a substantial bonus after the Monsanto case was resolved successfully.

18.     After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant Humphreys assured Urban that Humphreys would make Urban "rich" after the Monsanto case was resolved successfully.

7

19.     After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant Humphreys assured Urban that he would receive a bonus if the Vioxx, Celebrex, and Bextra cases were resolved successfully.

20.     Defendant Humphreys asked Plaintiff Urban to be the lead attorney for Defendant JFHA in the class action case styled Allen, et al. v. Monsanto, et al. (the "Monsanto case").

21.     Defendant JFHA had never handled a class action environmental toxic tort case before Plaintiff Urban joined Defendant JFHA.

22.     Stuart Calwell specifically requested that Plaintiff Urban work on the Monsanto case.

23.     Stuart Calwell is the principal attorney of The Calwell Practice.

24.     The Calwell Practice is co-counsel with Defendant JFHA on the Monsanto case.

25.     Plaintiff Urban convinced Stuart Calwell to sign the Memorandum of Understanding governing the co-counsel relationship between Defendant JFHA and The Calwell Practice.

26.     It was only because of Plaintiff Urban's tenacity that Stuart Calwell signed the Memorandum of Understanding for the Monsanto case.

27.     Plaintiff Urban began working on the Monsanto case in September 2004.

28.     The Allen, et al. v. Monsanto, et al. case was filed in December 2004.

29.     Plaintiff Urban did substantially all of the work done on the Monsanto case by Defendant JFHA from September 2004 until May 2007.

30.     Plaintiff Urban repeatedly requested the assistance of another attorney on the Monsanto case prior to April 2007, but was provided very little such assistance.

8

31.     Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Vioxx cases effective October 2004.

32.     Defendant JFHA had never handled a large scale pharmaceutical litigation like the Vioxx cases prior to October 2004.

33.     Plaintiff Urban did substantially all of the legal work done on the Vioxx cases handled by Defendant JFHA from October 2004 through October 2006.

34.     Defendant Humphreys wanted Plaintiff Urban to file 1000 Vioxx cases.

35.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on information provided by the clients.

36.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on information provided by the clients before any of the client's medical records had been ordered.

37.     Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Vioxx cases to reduce costs.

38.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases without any expert reports from a physician that supported specific causation for that specific Vioxx case.

39.     Plaintiff Urban reviewed more than 2000 Vioxx intakes for potential clients.

40.     Plaintiff Urban filed over 275 Vioxx cases while employed at Defendant JFHA.

41.     Plaintiff Urban repeatedly requested the assistance of another attorney on the Vioxx cases prior to September 2006, but was provided very little such assistance.

42.     Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Celebrex cases effective November 2004.

9

43. Plaintiff Urban did substantially all of the legal work done on the Celebrex cases handled by Defendant JFHA from November 2004 through October 2006.

44. Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients.

45. Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients before any of the client's medical records had been ordered.

46. Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Celebrex cases to reduce costs.

47. Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases without any expert reports from a physician that supported specific causation for that specific Celebrex case.

48. Plaintiff Urban filed over 100 Celebrex cases while employed at Defendant JFHA.

49. Plaintiff Urban repeatedly requested the assistance of another attorney on the Celebrex cases prior to September 2006, but was provided very little such assistance.

50. Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Bextra cases effective November 2004.

51. Plaintiff Urban did substantially all of the legal work done on the Bextra cases handled by Defendant JFHA from November 2004 through October 2006.

52. Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on information provided by the clients.

53. Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on

10

information provided by the clients before any of the client's medical records had been ordered.

54.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Bextra cases to reduce costs.

55.    Defendant Humphreys ordered Plaintiff Urban to file Bextra cases without any expert reports from a physician that supported specific causation for that specific Bextra case.

56.    Plaintiff Urban filed over 30 Bextra cases while employed at Defendant JFHA.

57.    Plaintiff Urban repeatedly requested the assistance of another attorney on the Bextra cases prior to September 2006, but was provided very little such assistance.

58.    Plaintiff Urban was never provided with any paralegals in the Washington, D.C. office of Defendant JFHA.

59.    Plaintiff Urban was never provided with any legal secretaries in the Washington, D.C. office of Defendant JFHA.

60.    For most of 2006, the Washington, D.C. office of Defendant JFHA did not have a receptionist.

61.    Because the Washington, D.C. office of Defendant JFHA did not have a receptionist for most of 2006, Plaintiff Urban was required to answer the telephone and take messages for Defendant Humphreys during that time.

62.    Because the Washington, D.C. office of Defendant JFHA did not have a receptionist for most of 2006, Plaintiff Urban was required to run personal errands for Defendant Humphreys including but not limited to mailing personal correspondence.

63.    Defendant Humphreys terminated the employment of John M. Mason in 2005

11

without any prior notice.

64. Defendant Humphreys has not kept complete time records for the Monsanto case for all of the work done by him on the case since September 2004.

65. Defendant Kiblinger has not kept complete time records for all of the legal work she has done since September 2004.

66. Defendant Kiblinger has not kept complete time records for all of the legal work she has done since January 2005.

67. Most of the attorneys employed by Defendant JFHA have not kept complete time records for all of the legal work they have done since January 2005.

68. Representatives from the Monsanto Company met with Defendant Humphreys, Plaintiff Urban, and representatives from The Calwell Practice for the first settlement negotiation in the Monsanto case on March 30, 2007.

69. Based upon the promises made by the Monsanto representatives during the March 30, 2007 settlement meeting, Defendant Humphreys agreed to a ninety day stay in all proceedings in the Monsanto case.

70. Defendant Humphreys agreed to this ninety day stay in the Monsanto case despite the fact that the stay would postpone the class certification hearing in the Monsanto case scheduled in May 2007.

71. Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk on or about April 11, 2007.

72. After Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk, Humphreys raised his arm with a clinched fist and threatened Urban on or about April 11, 2007.

12

73.    After Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk and Humphreys raised his arm with a clinched fist and threatened Urban, Humphreys said that Urban was close to being fired on or about April 11, 2007.

74.    After April 11, 2007, Defendant Humphreys never again mentioned the possibility that Plaintiff Urban would be fired to Urban until May 4, 2007.

75.    In April, 2007, Defendant Humphreys through Defendant Kiblinger ordered Plaintiff Urban to train three other JFHA attorneys to work on the Monsanto case.

76.    Defendant Humphreys would not have terminated Plaintiff Urban on May 4, 2007, if the Monsanto case Defendants had not agreed to a ninety day stay in the Monsanto case on March 30, 2007.

    DATED this 2_6th day of July, 2007.


                                    Respectfully submitted,


                                    _____
                                    Mark A. Smith
                                    Law Office of Mark A. Smith, LLC
                                      D.C. Bar No. 439116
                                    1785 Massachusetts Avenue, N.W.,
                                    Suite 100
                                    Washington, D.C. 20006
                                    (202) 776-0022
                                    (202) 756-7516 (facsimile)

                                    Attorney for Plaintiff Thomas F. Urban II

13

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| **THOMAS F. URBAN II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. ACTION NO. 2007-CA-003185 B** |
| | ) | **Judge Mary A. Terrell** |
| | ) | |
| **JAMES F. HUMPHREYS,** | ) | **Next Event: Initial Conference** |
| **et al.** | ) | **August 31, 2007** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT JAMES F. HUMPHREYS

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

33(a), hereby requests that Defendant James F. Humphreys ("Humphreys") answer the

following interrogatories fully, separately, and under oath, within forty-five (45) days of

receipt and serve these Answers on Plaintiff Urban by causing same to be delivered to the

offices of Mark A. Smith, Law Office of Mark A. Smith, LLC, 1785 Massachusetts

Avenue, N.W., Suite 100, Washington, D.C. 20036.

## DEFINITIONS AND INSTRUCTIONS

**I.    DEFINITIONS**

    A.    "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

    B.    "Defendant" shall refer to Defendant James F. Humphreys, and, where

applicable, any other person acting on purporting to act on his behalf, employees, and

agents, including any attorney or other representative.

C.      "Other Defendants" in this Set of Interrogatories shall refer to the following other Defendants to this action: James F. Humphreys & Associates, L.C. and Cindy J. Kiblinger.

D.      "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney, agent, or other representative.

E.      "Communications" or "communicate" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

F.      "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, electronic, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, electronic mail message, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, e-mails, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts,

2

sell orders, confirmations, checks, letters of credit, envelopes or folders or similar

containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of

testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc

recordings, sound recordings, video recordings, film, tapes, photographs, punch cards,

programs, data compilations from which information can be obtained (including matter

used in data processing), and other printed, written, handwritten, typewritten, recorded,

stenographic, computer-generated, computer sorted, or electronically sorted matter,

however and by whomever produced, prepared, reproduced, disseminated, or made. The

terms "document" and "documents" shall include all copies of documents by whatever

means made, except that where a documents is identified or produced, identical copies

thereof which do not contain any markings, additions, or deletions different from the

original need not be separately produced. "Document" and "documents" means and

includes all matter within he foregoing description that is in the possession, control or

custody of the Defendant or in the possession, control or custody of any attorney for the

Defendant. Without limiting the term "control," a document is deemed to be within your

control if you have ownership, possession, or custody of the document, or the right to

secure the document or copy thereof from any person or public or private entity having

physical possession thereof.

    G.    "Relating to" as used in these interrogatories means and includes

pertaining to, recording, evidencing, containing, setting forth, reflecting, showing,

disclosing, describing, explaining, summarizing, constituting, concerning or referring to,

whether directly or indirectly.

H.    "Identify" (with respect to documents) means to provide the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and/or recipient(s).

I.    "Identify" (with respect to persons) means to provide the person's full name, present or last known address, present or last known telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

J.    "Identify" (with respect to oral communications) means to provide (i) the identity of the speaker and the parties to the communication; (ii) the date of the communication; (iii) the place of the communication; (iv) the substance of the communi-cation; and (v) whether such communication has since been reduced to writing and, if so, identify each document.

K.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

L.    "Person" or "people" when used in these Interrogatories includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

M.    The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto</u>

<u>Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam

County, West Virginia, and, where appropriate, any related case including the Solutia

bankruptcy and the personal injury class action filed against Monsanto and others in the

Circuit Court of Kanawha County, West Virginia.


## II.    INSTRUCTIONS

A.    These interrogatories are submitted for the purposes of discovery and are

not to be taken as waiving any objections which may be made at trial to the introduction

of evidence by Plaintiff Urban on subjects covered by these requests or as an admission

at trial of the relevance or materiality of any of the matters covered by these requests.

B.    If you object to any interrogatory based on a claim of privilege, work

product, or any other exemption from discovery, state fully the reasons for each objection

and answer all portions of the interrogatory to which the claimed exemption does not

apply.

C.    These interrogatories are continuing and require supplemental responses

as provided for in D.C. Superior Court Rules of Civil Procedure 33(e).


## III.    INTERROGATORIES

**INTERROGATORY NO. 1:**  Please identify the person or persons answering these
interrogatories as well as all other persons furnishing information in response to these
interrogatories.

**INTERROGATORY NO. 2**:  Explain in detail each and every reason that Defendant
Humphreys terminated the employment of Plaintiff Urban on May 4, 2007.

**INTERROGATORY NO. 3:** Identify in detail every fact and every event that you allege supports Defendant Humphreys' decision to terminate the employment of Plaintiff Urban on May 4, 2007. For each such fact or event, identify the date of the event or the date on which the fact occurred, any witnesses or persons with knowledge of the fact or event, and the describe in detail how that affected Defendant Humphreys' decision.

**INTERROGATORY NO. 4:** Identify each person with whom Defendant Humphreys discussed the decision to terminate the employment of Plaintiff Urban prior to noon on May 4, 2007 and identify the oral or written communication by which this discussion occurred.

**INTERROGATORY NO. 5:** Identify each person with whom Defendant Humphreys discussed the decision to terminate the employment of Plaintiff Urban or Plaintiff Urban's departure from Defendant JFHA after noon on May 4, 2007, including but not limited to each and every client, co-counsel, opposing party, court and/or any prospective employer of Plaintiff Urban which you notified about or discussed his departure and identify in detail the oral or written communication by which this discussion occurred.

**INTERROGATORY NO. 6:** Identify the date on which Defendant Humphreys decided to terminate the employment of Plaintiff Urban and the circumstances which led to that decision..

**INTERROGATORY NO. 7:** Identify each raise received by any attorney employed by Defendant JFHA from 2000 to the present, providing the name of the attorney, the amount of the raise, and explain in detail the reason that the attorney received the raise.

**INTERROGATORY NO. 8:** Identify each bonus or profit-sharing payment received by any attorney employed by Defendant JFHA from 2000 to the present, providing the name of the attorney, the amount of the bonus or payment, and explain in detail the reason that the attorney received the bonus or payment.

**INTERROGATORY NO. 9:** Identify each person having any knowledge of any claim, allegation, or fact alleged in the Plaintiff's Complaint or having knowledge of any defense that will be asserted by Defendants to Plaintiff's Complaint.

**INTERROGATORY NO. 10:** Identify and give the substance of each statement, action, or admission against interest which you contend was made by the Plaintiffs or any other person whom you allege to be his agent, servant, and/or employee, including the name and occupation of each person who has personal knowledge of the making of each such

6

statement and state the place and date when each such statement and state the place and date when each such statement was made

**INTERROGATORY NO. 11:** Identify each and every person, including but not limited to any client or attorney of Defendant JFHA who had any complaint regarding Plaintiff Urban's work performance from July 12, 2004 until May 4, 2007, and the substance of that complaint.

DATED this 2nd day of July, 2007.

Respectfully submitted,

Mark A. Smith
Law Office of Mark A. Smith, LLC
D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20036
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

7

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| THOMAS F. URBAN II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACTION NO. 2007-CA-003185 B |
| | ) Judge Mary A. Terrell |
| | ) |
| JAMES F. HUMPHREYS, | ) Next Event: Initial Conference |
| et al. | ) August 31, 2007 |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
## TO DEFENDANT JAMES F. HUMPHREYS

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

34(a), hereby requests that Defendant James F. Humphreys ("Humphreys") produce the

following requested documents within forty-five (45) days of receipt to Plaintiff Urban

by causing same to be delivered to the offices of Mark A. Smith, Law Office of Mark A.

Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20006.

## DEFINITIONS AND INSTRUCTIONS

A.      These requests for production are submitted for the purposes of discovery

and are not to be taken as waiving any objections which may be made at trial to the

introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an

admission at trial of the relevance or materiality of any of the matters covered by these

requests.

B.      "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.    "Defendant" shall refer to Defendant James F. Humphreys, and, where applicable, any other person acting on purporting to act on his behalf, employees, and agents, including any attorney or other representative.

D.    "Other Defendants" in this Set of Requests shall refer to the following other Defendants to this action: James F. Humphreys & Associates, L.C. and Cindy J. Kiblinger.

E.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney or other representative.

F.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

G.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

H.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, or otherwise.

I.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic,

2

mechanical, electrical, or other recording or transcription thereof which is a substantially

verbatim recital of an oral statement made by the person making it and

contemporaneously recorded.

J.    "Document" and "documents" shall be used in their broadest sense and

shall mean and include all written, printed, typed, recorded, or graphic matter of every

kind and description, both originals and copies and all attachments and appendices

thereto.  Without limiting the foregoing, the terms "document" and "documents" shall

include all agreements, contracts, communications, correspondence, letters, telegrams,

telexes, messages, memoranda, records, reports, books, summaries, or other records of

telephone conversations or interview, summaries or other records of personal

conversations, minutes or summaries or other records of personal meetings and

conferences, summaries or other records of meetings and conferences, summaries,

dairies, dairy entries, calendars, appointment books, time records, instructions, work

assignments, visitor records, forecasts, statistical data, statistical statements, work sheets,

work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks,

telephone bills or records, bills, statements records of obligation and expenditure,

invoices, lists, journals, advertising, recommendations, files, printouts, compilations,

tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit,

envelopes or folders or similar containers, voucher analyses, studies, surveys,

transcription or hearings, transcripts of testimony, expense reports, microfilm,

microfiche, articles, speeches, tape or disc recordings, sound recordings, video

recordings, film, tapes, photographs, punch cards, programs, data compilations from

which information can be obtained (including matter used in data processing), and other

3

printed, written, handwritten, typewritten, recorded, stenographic, computer-generated

computer sorted, or electronically sorted matter, however and by whomever produced,

prepared, reproduced, disseminated, or made. The terms "document" and "documents"

shall include all copies of documents by whatever means made, except that where a

documents is identified or produced, identical copies thereof which do not contain any

markings, additions, or deletions different from the original need not be separately

produced. "Document" and "documents" means and includes all matter within he

foregoing description that is in the possession, control or custody of the Defendant or in

the possession, control or custody of any attorney for the Defendant. Without limiting

the term "control," a document is deemed to be within your control if you have

ownership, possession, or custody of the document, or the right to secure the document or

copy thereof from any person or public or private entity having physical possession

thereof.

      K.     "Relating to" as used in these requests means and includes pertaining to,

recording, evidencing, containing, setting forth, reflecting, showing, disclosing,

describing, explaining, summarizing, constituting, concerning or referring to, whether

directly or indirectly.

      L.     "Injury" or "injuries" as used herein includes not only physical or mental

injury, but economic or financial injury as well.

      M.     The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto</u>

<u>Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam

County, West Virginia, and, where appropriate, any related case including the Solutia

4

bankruptcy and the personal injury class action filed against Monsanto and others in the

Circuit Court of Kanawha County, West Virginia.

N.      If you object to production of any document based on a claim of privilege,

work product or any other exemption from discovery, please provide a privilege log

describing in detail the document and the reasons for each objection.


## REQUESTS FOR PRODUCTION

1.      All documents that allegedly support Defendant Humphreys' decision to
terminate the employment of Plaintiff Urban on May 4, 2007.

2.      All contemporaneous notes or electronic mail messages related to any
complaints that Defendant Humphreys had regarding Plaintiff Urban.

3.      All documents related to any potential settlement of the Monsanto case.

4.      All documents that identify any raise or bonus provided to any attorney
employed by Defendant James F. Humphreys & Associates, L.C. from 2000
to the present.

5.      All documents related to the potential settlement of any Vioxx, Celebrex or
Bextra case.

6.      All documents related to any prediction or estimate of the potential settlement
value of or any attorneys fees that may be earned from the Monsanto case.

7.      All documents related to any prediction or estimate of the potential settlement
value of or any attorneys fees that may be earned from the Vioxx, Celebrex,
and/or Bextra cases.

8.      All documents related to any potential sale of or offer to sell Defendant James
F. Humphreys & Associates, L.C. or any assets of JFHA by Defendant
Humphreys to any potential purchaser.

9.      All documents related to any insurance agreement under which any person
carrying on an insurance business may be liable to satisfy any part or all of a
judgment that may be entered in this action or to indemnify or reimburse for
payments made to satisfy the judgment.

10.    All accounting documents related to the operation of Defendant JFHA from 2000 to the present, including but not limited to all documents reflecting any attorneys' fees earned by the firm.

11.    All documents that describe the net worth of Defendant Humphreys on or around May 4, 2007.

12.    All documents that reflect any discussion of Defendant Humphrey's termination of the employment of Plaintiff Urban or Plaintiff Urban's departure from Defendant JFHA, including but not limited to any correspondence with any client of Defendant JFHA and any court.

13.    All documents supplied by Defendants, or anyone acting on Defendants' behalf, to any expert who is expected to testify at the trial of this case.

14.    All documents that will be relied upon as a basis for the opinions of any expert who is expected to testify at the trial of this case.

15.    A current curriculum vitae for each expert witness identified in Defendants' Rule 26(b)(4) statement.

16.    All documents relating to each statement, action, or admission against interest, or declaration against interest which Defendants contend was made by Plaintiff, or any person whom Defendant alleges to be Plaintiff's agent, servant, and/or employee.

17.    All documents referring or relating to any communication between Defendants and the Plaintiff, its agents, servants, and/or employees.

18.    All documents referred to or identified in Defendant's responses to the interrogatories propounded to Defendants by the Plaintiff.

19.    All documents referred to or identified in Defendant's responses to the requests for admissions propounded to Defendants by the Plaintiff.

20.    All documents relating to any conversations either individual Defendant has had with any individual, other than Defendants' own counsel, concerning facts and/or allegations noted in this lawsuit, i.e. Plaintiff's complaint or Defendant's defenses.

21.    Each picture, diagram, document, recording (electronic, photographic, or written), or other object (real evidence) which is known to you and which relates to the matters alleged in Plaintiff's complaint herein or which you contend support any of the defenses to the claims in Plaintiff's complaint.

22.   All documents relating to any statement, oral, written, or recorded, given to you, your agents, or attorneys concerning the matters alleged in the Complaint or in your answer herein or which may otherwise relate to any defense upon which you intend to rely.

23.   All documents upon which Defendants intend to rely in proving any allegation or denial contained in its Answer and/or which Defendants intend to offer into evidence as exhibits or use as demonstrative aids at the trial of this lawsuit.

24.   All statements, memoranda, notes, calendars, diaries, reports, photographs, or other materials that are in any way related to the Defendant's denials or allegations within its Answer to the Complaint.

25.   All documents not previously requested which relate to the claims in this case.

26.   All documents not previously requested which you contend support any other aspect of your defense in this case.

27.   All documents not previously requested that contradict any aspect of your defense in this case.

DATED this 24th day of July, 2007.

Respectfully submitted,

Mark A. Smith
Law Office of Mark A. Smith, LLC
 D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20006
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

## CERTIFICATE OF SERVICE

I I hereby certify that on this 2nd day of July, 2007, I caused a true and correct copy of the following: (1) Amended Complaint, (2) First Set of Interrogatories to each of the specifically named Defendants, (3) First Set of Production of Documents to each of the specifically named Defendants., and (4) First Set of Request for Admissions to each of the specifically named Defendants, to be delivered by Hand or Certified Mail, depending on the circumstances:

JAMES F. HUMPHREYS
3030 K Street, N.W.
Penthouse Apartment 301
Washington, D.C. 20007

CINDY J. KIBLINGER
105 Broncroft Place
Daniels, West Virginia 25832

JAMES F. HUMPHREYS & ASSOCIATES, L.C.
1200 New Hampshire Avenue, NW
Suite 510
Washington, DC 20036

Mark A. Smith



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

THOMAS F URBAN II
    Vs.
JAMES F HUMPHREYS

C.A. No.     2007 CA 003185 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge MARY A TERRELL
Date:  May 7, 2007
Initial Conference: 9:15 am, Friday, August 31, 2007
Location:  Courtroom 219
       500 Indiana Avenue N.W.
       WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| Thomas F. Urban II | **0003185-07** |
| *Plaintiff* | |
| **VS.** | Civil Action No. |
| James F. Humphreys & Associates, L.C. | |
| *Defendant* | |

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Thomas F. Urban II | |
| Name of Plaintiff's Attorney | By _____ |
| 2867 S. Abingdon St. | Deputy Clerk |
| Address | |
| Arlington, Virginia 22206 | |
| (703) 861-5235 | Date May 7, 2007 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(8)-456/Mar. 98    **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **THOMAS F. URBAN II,**<br>2867 S. Abingdon Street,<br>Arlington, Virginia 22206, | )<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| | ) |
| **v.** | ) |
| | ) |
| **JAMES F. HUMPHREYS,**<br>3030 K Street, N.W.,<br>Penthouse Apartment 3B<br>Washington, D.C. 20007, | )<br>)<br>)<br>) |
| **CINDY J. KIBLINGER,**<br>105 Broncroft Place,<br>Daniels, West Virginia 25832, | )<br>)<br>) |
| **and** | ) |
| **JAMES F. HUMPHREYS & ASSOCIATES, L.C.**<br>500 Virginia Street East, Suite 800,<br>Charleston, West Virginia 25301, | )<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

J000165-07

CIVIL ACTION NO.

JURY DEMAND

RECEIVED
Civil Clerk's Office
MAY 0 7 2007
Superior Court of the
District of Columbia
Washington, D.C.

## PLAINTIFF'S COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, DAMAGES, <u>AND DECLARATORY RELIEF</u>

### <u>PRELIMINARY STATEMENT</u>

This is an action for breach of contract, intentional infliction of emotional distress,

declaratory and injunctive relief, and damages brought by Plaintiff, THOMAS F. URBAN II,

against JAMES F. HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS &

ASSOCIATES, L.C. Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is conferred on this Court pursuant to 11 D.C. § 921. The vast majority of the events complained of in this complaint, including Plaintiffs hiring and firing, as well as the numerous promises and tortuous conduct against Plaintiff by Defendant Humphreys occurred in the District of Columbia.

2.  Venue in the District of Columbia is appropriate because all three Defendants have directed their dealings and engaged in the breach of contract and/or the intentional infliction of emotional distress at Plaintiff, who was working in Washington, D.C. Plaintiff Urban was hired in Washington, D.C. to work in the Washington, D.C. office. Each Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.  Plaintiff, THOMAS F. URBAN II (hereinafter, "URBAN"), is a Virginia resident licensed to practice law in Virginia and the District of Columbia, with a residence at 2867 S. Abingdon Street, Arlington, Virginia 22206.

4.  Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult individual residing in Washington, D.C. and licensed to practice law in the District of Columbia. Mr. Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 3B, Washington, D.C. 20007. His primary office is at 1200 New Hampshire Avenue, N.W., Suite 510, Washington, D.C. 20036.

5.  Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West Virginia. Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft Place, Daniels, West Virginia 25832. Her office is at 500 Virginia Street East, Suite

2

800, Charleston, West Virginia 25301, but she also supervised Plaintiff Urban's work in

Washington, D.C.

6.    Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a

business with its principal office at 500 Virginia Street East, Suite 800, Charleston,

West Virginia 25301, and an office at 1200 New Hampshire Avenue, N.W. , Suite 510,

Washington, D.C. 20036.  Defendant Humphreys is the sole owner of the Firm.

Defendant Kiblinger is the supervising attorney of the Firm.

## FACTS

7.    Plaintiff Urban was hired by Defendants Humphreys and the Firm effective July 2004.

During the negotiations culminating in Plaintiff Urban's employment with the Firm,

certain representations were made to him, including but not limited to the fact that

Defendant Humphreys would hire staff in the Washington, D.C. office of the Firm, that

Plaintiff would be eligible for yearly raises and bonuses, and that Plaintiff would be

provided with adequate resources in order to properly litigate the cases to which he was

assigned.  Plaintiff Urban was promised that Defendant Humphreys and the Firm had

adequate financial resources to litigate cases in the manner in which Plaintiff Urban was

accustomed to litigating cases at large defense firms.

8.    When Plaintiff was hired, he was given an initial salary of $160,000.00 per year, a

salary significantly below the appropriate salary in the Washington, D.C. area for an

attorney of Plaintiff Urban's education, skill, and experience.  Plaintiff Urban agreed to

this lower salary based upon his reliance on promises of bonuses and raises by

Defendant Humphreys.

3

9.    Soon after being hired by Defendant Humphreys and joining the Firm, Plaintiff Urban

was assigned to work on an environmental toxic tort class action against the Monsanto

Company and other defendants involving contamination from a plant in Nitro, West

Virginia, as well as assigned to handle all of the pharmaceutical cases being handled by

the Firm. Prior to these assignments, the Firm had virtually no experience with large

environmental toxic tort cases or pharmaceuticals cases. As Defendant Humphreys

knew, these cases would take several years until they were resolved and would bring

money into the Firm. Conservatively, the Monsanto case was the largest single case

that the firm had ever handled and was "the most important case in the firm" during the

time of Plaintiff Urban's employment by Defendant Humphreys' own admission.

10.   Despite promises by Defendant Humphreys that staff in D.C. would be hired, once

Plaintiff Urban joined the Firm, Defendant Humphreys insisted that all of Plaintiff

Urban's staff be hired and work in the West Virginia office, purportedly as a cost-

savings matter. The little staff that was hired in the D.C. office, one receptionist

position, was the source of constant turn-over due to Defendant Humphrey's

dissatisfaction with the occupants of that position.

11.   After five months at the firm, Defendant Humphreys and the Firm raised Plaintiffs'

salary $10,000.00, for a total yearly salary of $170,000.00, as of January 2005.

Defendant Humphreys stated that Plaintiff Urban was doing a terrific job with the cases

to which he was assigned.

12.   Throughout 2005 and 2006, Plaintiff Urban worked substantial hours, including

significant travel and time spent in West Virginia. Plaintiff Urban was the only attorney

assigned to over three thousand pharamaceutical intakes and filed over five hundred

4

pharmaceutical cases, despite repeated requests to Defendant Humphreys for more attorney assistance. In addition, Plaintiff Urban was essentially the only Firm attorney assigned to the major environmental toxic tort class action concerning a Monsanto plant in Nitro, West Virginia. This case also required substantial work and significant travel. Again, Plaintiff Urban repeatedly sought that Defendant Humphreys assign additional attorney assistance with this case, a request that was consistently rejected. In fact, in the summer of 2005, Defendant Humphreys fired the only attorney who had provided any real modicum of assistance to Plaintiff Urban on the Monsanto case.

13.   Similarly, Plaintiff Urban's requests that he be provided with staff in the Washington, D.C. office were rejected by Defendant Humphreys. In fact, for most of 2006, the Washington, D.C. office did not have a receptionist and Plaintiff Urban was required to interrupt his work when in the office to answer the telephone and greet visitors for Defendant Humphreys.

14.   At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff Urban with any raise or bonus. Defendant Humphreys assured Plaintiff Urban that he was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff Urban had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff Urban that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff Urban brought income to the Firm that Plaintiff Urban "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff Urban "rich" when the cases were settled or otherwise resolved.

5

15.    At the end of 2006, Defendant Humphreys and the Firm again failed to provide Plaintiff

Urban with any raise or bonus.  Defendant Humphreys assured Plaintiff Urban that he

was still doing a terrific job, but noted that the cases to which Plaintiff Urban had been

assigned had not yet brought revenue to the firm.  Defendant Humphreys acknowledged

the long hours that Plaintiff Urban had been working, including substantial overnight

travel to West Virginia.  Defendant Humphreys assured Plaintiff Urban that Defendant

Humphreys would make sure that when the cases being worked up by Plaintiff Urban

brought income to the Firm that Plaintiff Urban would be compensated with a

significant bonus at that time.

16.    On March 30, 2007, Plaintiff Urban and Defendant Humphreys attended the first

settlement meeting with the Defendants in the Monsanto case involving Nitro, West

Virginia.  The meeting went so well that Defendant Humphreys agreed to a ninety day

stay of all proceedings in the case in order that a settlement could be worked out.

17.    Similarly, the first batch of six pharmaceuticals cases were sent to a defendant on May

3, 2007, after an agreement by that defendant that a settlement offer would be made on

these cases.

18.    During the weeks after the first announcements of a possible settlement and intensifying

after March 30, 2007, Defendant Humphreys and Defendant Kiblinger engaged in a

series of abusive e-mail correspondence, telephone calls, and conversations directed at

Plaintiff Urban.

19.    On May 4, 2007, while Plaintiff Urban was home sick, Defendant Humphreys called

him at home in order to terminate Plaintiff Urban's employment with the Firm.

Although Defendant Humphreys attempted to set forth various pretextual reasons for

6

Plaintiff Urban's firing, it is clear that Plaintiff Urban was fired so that Defendant

Humphreys could avoid sharing in any of the profits of the Monsanto case and the

pharmaceuticals cases with Plaintiff Urban.

## COUNT I

### BREACH OF AGREEMENT

20.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 19 as if

they were fully set forth.

21.    Defendant Humphreys, both on behalf of himself and on behalf of the Defendant Firm,

made certain representation about compensation, delayed compensation, bonuses,

sharing in profits, and raises, as described above.

22.    Plaintiff Urban relied upon these promises and in reliance on these promises, continued

to work for the Defendant Firm despite the failure of Defendant Humphreys and the

Firm to provide Plaintiff Urban with promised raises and bonuses.  Plaintiff Urban

relied upon Defendant Humphreys' promises of substantial compensation once the

cases on which Plaintiff Urban developed and litigated reached resolution.

23.    Defendant Humphreys fired Plaintiff Urban without fulfilling any of these promises.

24.    Defendants Humphreys and the Firm will likely profit in an enormous amount, likely in

the millions of dollars, due to the hard work and extreme effort engaged in by Plaintiff

Urban on the Monsanto and pharmaceuticals cases based upon these promises.

25.    Plaintiff Urban has been significantly damaged monetarily because of these breaches of

the promises made by Defendants Humphreys and the Firm.

WHEREFORE, Plaintiff respectfully requests the following relief against the

Defendants:

7

A.   That a judgment be entered against Defendant Humphreys and the Firm and in favor of Plaintiff Urban in the amount that the fact-finder determines that Plaintiff Urban has been injured by these Defendants' breach of contract;

B.   That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.   That such other and further relief be granted as this Court may deem just and proper.

## COUNT II

## DECLARATORY JUDGMENT –

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

26.   Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 25 as if they were fully set forth.

27.   Defendant Humphreys and the Firm made promises to Plaintiff Urban that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff Urban "rich."

28.   Defendants Humphreys and the Firm have not honored these promises. Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

29.   Plaintiff Urban has insisted that he is entitled to a percentage of the attorneys' fee for each of the cases on which he worked, including but not limited to the Monsanto case. WHEREFORE, Plaintiff respectfully requests the following relief against Defendants Humphreys and the Firm:

8

A.    That a declaratory judgment be entered against Defendant Humphreys and the Firm in favor of Plaintiff Urban that he be provided with no less than twenty-five (25) per cent of the attorneys' fees earned by Defendant Firm or any successor or assign for the cases on which Plaintiff Urban worked, including but not limited to the Monsanto case and all pharmaceuticals cases filed by Plaintiff Urban while at the Firm;

B.    That judgment be entered for the costs of this suit and reasonable attorneys' fees against these Defendants and in favor of Plaintiff Urban;

C.    That such other and further relief be granted as this Court may deem just and proper.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 23 as if they were fully set forth.

31.    Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves and the Firm, engaged in a series of abusive interactions with Plaintiff Urban. It is likely that these interactions were intended to encourage Plaintiff Urban to seek other employment and forego the promised compensation to which Plaintiff Urban was due.

32.    As described above, this abusive activity was so outrageous, without justification or excuse, as to be beyond the bounds of decency.

33.    This behavior was calculated to and did cause Plaintiff Urban harmful physical consequences which required Plaintiff Urban to seek medical help.

9

34.    Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be

held liable for the tort of intentional infliction of emotional distress or outrage.

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants

Humphreys, Kiblinger, and the Firm:

      A.    That a judgment be entered against all three Defendants in the amount

that the fact-finder determines that Plaintiff has been injured by

Defendants' intentional infliction of emotional distress;

      B.    That judgment be entered for the costs of this suit and reasonable

attorneys' fees against these Defendants and in favor of Plaintiff Urban;

      C.    That such other and further relief be granted as this Court may deem just

and proper.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the

Defendants:

      A.    That a judgment be entered against Defendants Humphreys and the Firm in

the amount that the fact-finder determines that Plaintiff has been injured by

Defendants' breach of contract;

      B.    That a declaratory judgment be entered declaring that Plaintiff is entitled to

no less than twenty-five (25) percent of any attorneys' fee that Defendants

Humphreys and/or the Firm, their assigns, or successors obtain as a result of

any of the matters on which Plaintiff worked during his employment with

Defendant Firm;

10

C. That a judgment be entered against Defendants Humphreys, Kiblinger, and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' intentional infliction of emotional distress;

D. That judgment be entered for the costs of this suit and reasonable attorneys' fees against all Defendants and in favor of Plaintiff Urban;

E. That such other and further relief be granted as this Court may deem just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

DATED this 7th day of May, 2007.

Respectfully submitted,

Thomas F. Urban II
 D.C. Bar No. 432127
2867 S. Abingdon St.
Arlington, Virginia 22206
(703) 861-5235
(703) 931-0206 (facsimile)
tfuii@yahoo.com

and

James H. Falk, Jr.
10101 Colvin Run Rd
Great Falls, Virginia 22066
(703) 928-1600
(703) 759-0859 (facsimile)
sportlaw@hotmail.com

Attorneys for Plaintiff

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| THOMAS F. URBAN II,<br>2867 S. Abingdon Street,<br>Arlington, Virginia 22206 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. NO. 2007 CA 003185 B |
| JAMES F. HUMPHREYS<br>3030 K Street, N.W.<br>Penthouse Apartment 301<br>Washington, D.C. 20007 | ) ) ) ) ) | JURY DEMAND |
| CINDY J. KIBLINGER<br>105 Broncroft Place<br>Daniels, West Virginia 25832 | ) ) ) ) | |
| and | ) ) | |
| JAMES F. HUMPHREYS & ASSOCIATES, L.C.<br>1200 New Hampshire Avenue, NW<br>Suite 510<br>Washington, DC 20036 | ) ) ) ) | |

## AMENDED COMPLAINT

### Preliminary Statement

This is an action for breach of contract, promissory estoppel, unjust enrichment,

quantum meruit, intentional infliction of emotional distress, declaratory and injunctive relief,

and damages. It is brought by Plaintiff, THOMAS F. URBAN II, against JAMES F.

HUMPHREYS, CINDY J. KIBLINGER, and JAMES F. HUMPHREYS & ASSOCIATES,

L.C. Plaintiff states as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court pursuant to 11 D.C. Code § 921.  The vast majority

of the events presented in this complaint, including Plaintiff's hiring and firing, various

tortious acts against Plaintiff, and the core breach of contract, occurred in the District of

Columbia.

2.    Venue in the District of Columbia is appropriate because the events alleged in this

complaint occurred substantially in the District of Columbia and because the Firm has

offices in the District of Columbia, which is where Plaintiff's office was during his

employment with the Firm.  In addition to these facts, Defendant Humphreys, himself,

has a personal residence in the District of Columbia and a D.C. office in the same suite

where Plaintiff was formerly located.  The Defendants routinely deal with the D.C. office

and engaged in activities there frequently during Plaintiff's period of employment.  Each

Defendant has engaged in tortious activity in the District of Columbia.

## PARTIES

3.    Plaintiff, THOMAS F. URBAN II (hereinafter, "Plaintiff"), is a Virginia resident

licensed to practice law in Virginia and the District of Columbia, with a residence at 2867

S. Abingdon Street, Arlington, Virginia 22206.

4.    Defendant, JAMES F. HUMPHREYS ("Humphreys"), is an adult residing in

Washington, D.C. and licensed to practice law in the District of Columbia.  Mr.

Humphreys's last known address is 3030 K Street, N.W., Penthouse Apartment 301,

Washington, D.C. 20007.  His primary office is at 1200 New Hampshire Avenue, N.W.,

Suite 510, Washington, D.C. 20036.

2

5.    Defendant Cindy J. Kiblinger ("Kiblinger"), is an adult residing in the State of West

Virginia. Upon information and belief, Ms. Kiblinger has a residence at 105 Broncroft

Place, Daniels, West Virginia 25832. Her office is at 500 Virginia Street East, Suite 800,

Charleston, West Virginia 25301. She, however, supervised Plaintiff's work in

Washington, D.C.

6.    Defendant, JAMES F. HUMPHREYS & ASSOCIATES, L.C. (the "Firm") is a business

with an office at 1200 New Hampshire Avenue, N.W. , Suite 510, Washington, D.C.

20036. Defendant Humphreys is the sole owner of the Firm. Defendant Kiblinger is the

supervising attorney of the Firm.

## FACTS

7.    Defendant Humphreys hired Plaintiff to work at his Firm effective July 2004. During the

negotiations that culminated in Plaintiff's employment with the Firm, certain agents of

the Firm, including Defendant Humphreys, made various representations to Plaintiff.

Among such representations were the following: (1) that Defendant Humphreys would

hire staff in the Washington, D.C. office of the Firm; (2) that Plaintiff would be eligible

for yearly raises; (3) that Plaintiff would receive case-related bonuses, and (4) that

Plaintiff would be provided with adequate resources in order properly to litigate the cases

to which he was assigned. Defendant Humphreys promised Plaintiff that the Firm had

adequate financial resources to litigate cases in the manner in which Plaintiff was

accustomed to litigating cases at large defense firms. Plaintiff had been an associate at

the firm of Williams and Connolly for five years and had worked at other large, reputable

defense firms.

3

8.    Defendant Humphreys hired Plaintiff at a starting salary of $160,000.00 per year, an

amount significantly below the appropriate salary in the Washington, D.C. area for an

attorney of Plaintiff's education, skill, and experience. Plaintiff agreed to this lower

salary based upon his reliance on the opportunity for raises and the promises of case-

related bonuses.

9.    Soon after Defendant Humphreys had hired Plaintiff and added him to the Firm, Plaintiff

was assigned to work on an environmental toxic tort class action against the Monsanto

Company, and other defendants, involving contamination from a plant in Nitro, West

Virginia. Plaintiff was also assigned a bevy of pharmaceutical cases being handled by

the Firm. Prior to these assignments, the Firm had virtually no experience with large

environmental toxic tort cases or pharmaceutical cases. As Defendant Humphreys knew,

these cases would take several years until they matured to the point that they would bring

money into the Firm. Conservatively, the Monsanto case was the largest single case that

the firm had ever handled and, according to Defendant Humphreys, was "the most

important case in the firm" during the time of Plaintiff's employment.

10.   Despite Defendant Humphreys's promises that he would arrange for the hiring of

additional staff in D.C., Defendant Humphreys did not do that. Instead, he insisted that

all of Plaintiff's staff be hired in West Virginia and work in the West Virginia office,

purportedly as a cost-savings matter.

11.   As of January 2005, after five months at the firm, Defendant Humphreys and the Firm

raised Plaintiffs' salary $10,000.00 to $170,000.00. Defendant Humphreys stated that

Plaintiff was doing a terrific job with the cases to which he had been assigned.

4

12.    From late 2004 through April 2007, Plaintiff worked substantial hours, including

significant travel to West Virginia. Plaintiff was the only attorney assigned to over two

thousand pharmaceutical intakes and, himself, filed over four hundred pharmaceutical

cases. Defendant Humphreys ignored Plaintiff's repeated requests for more attorney

assistance. In addition, Plaintiff was essentially the only Firm attorney assigned to

Monsanto case. Indeed, prior to Plaintiff's arrival at the Firm, there was no attorney

handling class action suits. Plaintiff was the chief lawyer at the firm involved in the

filing of the Monsanto case, and he was the one in the Firm responsible for its

management, development, and prosecution. In terms of Humphrey's firm, it was mainly

because of Plaintiff's efforts that the Monsanto suit became the subject of settlement

discussions in March of 2007. For nearly two and a half years, the case required steady,

substantial work and significant travel. Again, Plaintiff repeatedly entreated Defendant

Humphreys to assign additional attorney assistance with this case, but Defendant

Humphreys would not. Indeed, in the summer of 2005, Defendant Humphreys fired the

only attorney who had provided any meaningful assistance to Plaintiff on the Monsanto

case.

13.    Similarly, Defendant Humphreys rejected Plaintiff's requests that he be provided with

staff in the Washington, D.C. office. In fact, for most of 2006, the Washington, D.C.

office did not have a receptionist and Plaintiff was required, in addition to carrying his

considerable attorney work-load, to answer the telephone, field visitors, and run errands

for Defendant Humphreys.

14.    At the end of 2005, Defendant Humphreys and the Firm failed to provide Plaintiff with

any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a

5

terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases that Plaintiff worked brought income to the Firm, Plaintiff "would be taken care of." In fact, Defendant Humphreys promised to make Plaintiff "rich" when the cases were settled or otherwise resolved.

15. At the end of 2006, Defendant Humphreys and the Firm, again, failed to provide Plaintiff with any raise or bonus. Defendant Humphreys assured Plaintiff that he was still doing a terrific job, but noted that the cases to which Plaintiff had been assigned had not yet brought revenue to the firm. Defendant Humphreys again acknowledged the long hours that Plaintiff had been working, including substantial overnight travel to West Virginia. Defendant Humphreys assured Plaintiff that Defendant Humphreys would make sure that when the cases being worked up by Plaintiff brought income to the Firm, Plaintiff would be compensated with a significant bonus at that time.

16. Until mid to late 2006, Plaintiff and Defendant Humphreys had a cordial, amicable relationship. This changed when Plaintiff asked Defendant Humphreys to put in writing his oft-repeated promise that Plaintiff would receive substantial bonus money when his cases yielded revenues to the firm.

17. On March 30, 2007, after almost two and a half years of the firm's involvement in class action litigation that had been handled almost exclusively by Plaintiff, Plaintiff and Defendant Humphreys attended the first settlement meeting with the defendants in the Monsanto case. The meeting went well for Defendant Humphreys and the Firm, and

6

Defendant Humphreys agreed to a ninety-day stay of all proceedings in the case in order that a settlement could be worked out.

18.    Similarly, Plaintiff had the first batch of six pharmaceuticals cases sent to Pfizer on or about May 3, 2007, after having earlier negotiated an agreement with that defendant, which strongly promoted a settlement-offer being received to resolve those cases.

19.    Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff. The expected sum is in the millions, perhaps tens-of-millions, of dollars. If realized, these sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and the pharmaceutical cases.

20.    During the weeks after the first announcement of a possible settlement in the Monsanto case, Defendant Humphreys and Defendant Kiblinger engaged in a series of harassing e-mail correspondences, telephone calls, and conversations directed at Plaintiff.

21.    On or about May 4, 2007, while Plaintiff was home sick, and within one month of the death of Plaintiff's mother and six months after the sudden death of his father, Defendant Humphreys called Plaintiff at home in order to terminate Plaintiff's employment with the Firm. Although Defendant Humphreys attempted to set forth various pretextual reasons for Plaintiff's firing, reasonable review of the evidence will lead to the conclusion that Plaintiff was fired so that Defendant Humphreys could avoid according Plaintiff an appropriate share of the profits from the settlement of the Monsanto case and the pharmaceuticals cases.

## COUNT I

## BREACH OF CONTRACT

7

22.    Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

23.    Plaintiff made clear, through various statements that he made to Defendant Humphreys, that, consistent with his level of experience, his considerable contribution to the development of the relevant cases, and in accord with the common patterns of compensation in the Plaintiffs bar of the legal practice, he desired and expected much greater compensation for his work than his base salary represented.

24.    Defendant Humphreys recognized Plaintiff's expectation and responded to it by offering him, instead of a considerably higher salary, the prospect of participating, in the form of bonuses, in proceeds from cases he had work on while at the firm.  Plaintiff accepted Defendant Humphreys's offer.  In consideration he went without the higher salary or non-case related bonuses and continued to work on the cases for the comparatively modest salary he was receiving.

25.    Defendant Humphreys fired Plaintiff to avoid having to fulfill the terms of this contract, which he knew would in all probability prove quite lucrative to Plaintiff.

26.    Defendants Humphreys and the Firm will stand to profit to an enormous extent due to the work of Plaintiff.  The expected sum is in the millions, perhaps tens-of-millions, of dollars.  These sums will come to Defendant Humphreys and his firm due to the hard work and extreme effort that Plaintiff exerted on the aforementioned Monsanto matter and pharmaceutical cases.

27.    Plaintiff has been significantly damaged monetarily because of Defendants' breach of this contract.

**COUNT II**

8

### PROMISSORY ESTOPPEL

28.    Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

29.    Defendant Humphreys promised Plaintiff that he would receive a bonus when each case that Plaintiff had been working yielded revenues for the Firm.

30.    Plaintiff continued working on the Monsanto case and the pharmaceutical cases, despite not receiving annual raises or any bonus, because of his reliance on Defendant Humphreys's promise.

31.    To the extent that the Firm receives funds as a result of those cases, Plaintiff will have relied on Defendant's promise to his detriment.

### COUNT III

### UNJUST ENRICHMENT

32.    Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

33.    Plaintiff's extended hard work and professional input, direction, development, and judgment in connection with the Monsanto case and the pharmaceutical cases, conferred a benefit upon Defendant Humphreys and the Firm worth a percentage of whatever turns out to be the settlement amount of those cases.

34.    Defendant Humphrey and the Firm had an appreciation and knowledge of the benefit conferred by Plaintiff.

35.    Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon them by Plaintiff.

9

36.   Under the circumstances, it is inequitable for Defendants to retain the benefits conferred upon them by Plaintiff without payment to Plaintiff of the fair value, under the circumstances, of such benefits.

### COUNT IV

### QUANTUM MERUIT

37.   Plaintiff herein repeats and re-alleges, and incorporates by reference, the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

38.   Plaintiff conferred a benefit upon Defendant Humphreys and the Firm in the form of working, developing, and litigating the Monsanto and pharmaceutical cases to the point that they were ripe for settlement.

39.   Defendant Humphreys and the Firm had an appreciation and knowledge of the benefit conferred by Plaintiff.

40.   Defendant Humphreys and the Firm accepted and/or retained the benefits conferred upon them by Plaintiff's considerable efforts, which resulted in the Monsanto case and the pharmaceutical cases leading to potentially very lucrative settlement discussions.

41.   Under the circumstances, it is inequitable for Defendant Humphreys and the Firm to retain the benefits conferred upon them by Plaintiff without payment to Plaintiff of the fair value of such benefits.

### COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

42.   Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

10

43.  Beginning in late 2006, Defendants Humphreys and Kiblinger, on behalf of themselves and the Firm, engaged in a series of abusive interactions with Plaintiff. It is probable that these interactions were intended to encourage Plaintiff to seek other employment and forego the promised compensation to which Plaintiff was due.

44.  As described above, this abusive activity was so outrageous, without justification or excuse, as to be beyond the bounds of decency.

45.  This behavior could foreseeably have caused, and did cause, Plaintiff harmful, physical consequences, which required Plaintiff to seek medical help.

46.  Based upon this conduct, Defendants Humphreys, Kiblinger, and the Firm should be held liable for the tort of intentional infliction of emotional distress.

## COUNT VI

## DECLARATORY JUDGMENT

## ENTITLEMENT TO PROCEEDS FROM CASE REVENUES

47.  Plaintiff incorporates herein the allegations contained in Paragraphs 1 through 21 as if they were fully set forth.

48.  Defendant Humphreys and the Firm made promises to Plaintiff that he would receive a portion of the proceeds from the cases upon which he worked sufficient to make Plaintiff "rich."

49.  Defendants Humphreys and the Firm have not honored these promises. Rather, on May 4, 2007, Defendant Humphreys insisted that he has no intention of honoring these promises.

11

50.  Plaintiff has insisted that he is entitled to a percentage of the attorneys' fee for each of the cases on which he worked, including but not limited to the Monsanto case.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for the following relief against the Defendants:

A.  That a judgment be entered against Defendants Humphreys and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' breach of contract;

B.  That a judgment be entered against Defendants Humphreys and the Firm in the amount that the fact-finder determines that Plaintiff is entitled based upon the doctrine of promissory estoppel;

C.  That a judgment be entered against Defendants Humphreys and the Firm in the amount that the fact-finder determines that Plaintiff is entitled to based upon the doctrine of unjust enrichment;

D.  That a judgment be entered against Defendants Humphreys and the Firm in the amount that the fact-finder determines that Plaintiff is entitled to based upon the doctrine of quantum meruit;

E.  That a judgment be entered against Defendants Humphreys, Kiblinger, and the Firm in the amount that the fact-finder determines that Plaintiff has been injured by Defendants' intentional infliction of emotional distress;

F.  That a declaratory judgment be entered declaring that Plaintiff is entitled to a percentage of any attorneys' fee that Defendants Humphreys and/or the

12

Firm, their assigns, or successors obtain as a result of any of the matters on which Plaintiff worked during his employment with Defendant Firm;

G. That judgment be entered for the costs of this suit and reasonable attorneys' fees against all Defendants and in favor of Plaintiff;

H. That such other and further relief be granted as this Court may deem just and proper.

PLAINTIFF REQUESTS THAT ALL ISSUES BE TRIED BEFORE A JURY.

DATED this 2nd day of July, 2007.

Respectfully submitted,

Mark A. Smith
D.C. Bar No. 439116
1785 Massachusetts NW
Suite 100.
Washington, DC 20036
(202) 776-0022
(202) 756-7516 (facsimile)
marksmith@masmithlaw.com
masmithlaw.com
Attorney for Plaintiff

13

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| THOMAS F. URBAN II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACTION NO. 2007-CA-003185 B |
| | ) | Judge Mary A. Terrell |
| | ) | |
| JAMES F. HUMPHREYS, | ) | Next Event: Initial Conference |
| et al. | ) | August 31, 2007 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## TO DEFENDANT JAMES F. HUMPHREYS & ASSOCIATES, L.C.

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule 33(a), hereby requests that Defendant James F. Humprheys & Associates, L.C. ("JFHA") answer the following interrogatories fully, separately, and under oath, within forty-five (45) days of receipt and serve these Answers on Plaintiff Urban by causing same to be delivered to the offices of Mark A. Smith, Law Office of Mark A. Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20036.

## DEFINITIONS AND INSTRUCTIONS

I.    DEFINITIONS

A.    "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

B.    "Defendant" shall refer to Defendant James F. Humphreys & Associates, L.C. ("JFHA"), and, where applicable, any other person acting on purporting to act on its behalf, employees, and agents, including any attorney or other representative.

C.     "Other Defendants" in this Set of Interrogatories shall refer to the following other Defendants to this action: James F. Humphreys. and Cindy J. Kiblinger.

D.     "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney, agent, or other representative.

E.     "Communications" or "communicate" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise).

F.     "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, electronic, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, electronic mail message, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, e-mails, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar

2

containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of

testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc

recordings, sound recordings, video recordings, film, tapes, photographs, punch cards,

programs, data compilations from which information can be obtained (including matter

used in data processing), and other printed, written, handwritten, typewritten, recorded,

stenographic, computer-generated, computer sorted, or electronically sorted matter,

however and by whomever produced, prepared, reproduced, disseminated, or made. The

terms "document" and "documents" shall include all copies of documents by whatever

means made, except that where a documents is identified or produced, identical copies

thereof which do not contain any markings, additions, or deletions different from the

original need not be separately produced. "Document" and "documents" means and

includes all matter within he foregoing description that is in the possession, control or

custody of the Defendant or in the possession, control or custody of any attorney for the

Defendant. Without limiting the term "control," a document is deemed to be within your

control if you have ownership, possession, or custody of the document, or the right to

secure the document or copy thereof from any person or public or private entity having

physical possession thereof.

     G.     "Relating to" as used in these interrogatories means and includes

pertaining to, recording, evidencing, containing, setting forth, reflecting, showing,

disclosing, describing, explaining, summarizing, constituting, concerning or referring to,

whether directly or indirectly.

3

H.    "Identify" (with respect to documents) means to provide the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and/or recipient(s).

I.    "Identify" (with respect to persons) means to provide the person's full name, present or last known address, present or last known telephone number, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

J.    "Identify" (with respect to oral communications) means to provide (i) the identity of the speaker and the parties to the communication; (ii) the date of the communication; (iii) the place of the communication; (iv) the substance of the communication; and (v) whether such communication has since been reduced to writing and, if so, identify each document.

K.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

L.    "Person" or "people" when used in these Interrogatories includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

4

M.    The "Monsanto case" refers to the case <u>Allen, et al. v. Monsanto</u> <u>Company, et al.</u>, Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

## II.    **INSTRUCTIONS**

A.    These interrogatories are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.    If you object to any interrogatory based on a claim of privilege, work product, or any other exemption from discovery, state fully the reasons for each objection and answer all portions of the interrogatory to which the claimed exemption does not apply.

C.    These interrogatories are continuing and require supplemental responses as provided for in D.C. Superior Court Rules of Civil Procedure 33(e).

## III.    **INTERROGATORIES**

**INTERROGATORY NO. 1:** Please identify the person or persons answering these interrogatories as well as all other persons furnishing information in response to these interrogatories.

**INTERROGATORY NO. 2:** Explain in detail each and every reason that any employee, agent, or shareholder of Defendant JFHA told any person that Humphreys terminated the employment of Plaintiff Urban on May 4, 2007, and identify in detail the oral or written communication by which this discussion occurred.

**INTERROGATORY NO. 3:** Identify in detail every fact and every event that you allege supports Defendant Humphreys' decision to terminate the employment of Plaintiff Urban on May 4, 2007. For each such fact or event, identify the date of the event or the date on which the fact occurred, any witnesses or persons with knowledge of the fact or event, and the describe in detail how that affected Defendant Humphreys' decision.

**INTERROGATORY NO. 4:** Identify each raise received by any attorney employed by Defendant JFHA from 2000 to the present, providing the name of the attorney, the amount of the raise, and explain in detail the reason that the attorney received the raise.

**INTERROGATORY NO. 5:** Identify each bonus or profit sharing payment received by any attorney employed by Defendant JFHA from 2000 to the present, providing the name of the attorney, the amount of the bonus or payment, and the explain in detail the reason that the attorney received the bonus or payment.

**INTERROGATORY NO. 6:** Identify and give the substance of each statement, action, or admission against interest which you contend was made by the Plaintiffs or any other person whom you allege to be their agent, servant, and/or employee, including the name and occupation of each person who has personal knowledge of the making of each such statement and state the place and date when each such statement and state the place and date when each such statement was made

**INTERROGATORY NO. 7:** Identify each person you expect to call as a witness at trial, and as to each such person, state the subject matter on which he or she is expected to testify; and the substance of the facts and opinions to which each witness is expected to testify; and the basis for the witnesses' knowledge of such facts.

**INTERROGATORY NO. 8:** Identify each person you expect to call as an expert witness at trial, and as to each such person, state the subject matter on which he or she is expected to testify; the substance of the facts and opinions to which each witness is expected to testify; the grounds for each such opinion; and the professional qualifications of each such witness.

**INTERROGATORY NO. 9:** Identify each person with whom any employee of Defendant JFHA notified or discussed the fact that Plaintiff Urban was no longer with Defendant JFHA, identify the oral or written communication by which this notification or discussion occurred, and the substance of that communication.

6

**INTERROGATORY NO. 10**: Identify each and every person, including but not limited to any client or attorney of Defendant JFHA who had any complaint regarding Plaintiff Urban's work performance from July 12, 2004 until May 4, 2007, and the substance of that complaint.

DATED this 2nd day of July, 2007.

Respectfully submitted,

Mark A. Smith
Law Office of Mark A. Smith, LLC
D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20006
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

7

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| THOMAS F. URBAN II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACTION NO. 2007-CA-003185 B |
| | ) Judge Mary A. Terrell |
| | ) |
| JAMES F. HUMPHREYS, | ) Next Event: Initial Conference |
| et al. | ) August 31, 2007 |
| | ) |
| Defendants. | ) |
| | ) |

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
### TO DEFENDANT JAMES F. HUMPHREYS & ASSOCIATES, L.C.

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

34(a), hereby requests that Defendant James F. Humphreys & Associates, L.C. ("JFHA")

produce the following requested documents within forty-five (45) days of receipt to

Plaintiff Urban by causing same to be delivered to the offices of Mark A. Smith, Law

Office of Mark A. Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100,

Washington, D.C. 20006.

### DEFINITIONS AND INSTRUCTIONS

A.      These requests for production are submitted for the purposes of discovery

and are not to be taken as waiving any objections which may be made at trial to the

introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an

admission at trial of the relevance or materiality of any of the matters covered by these

requests.

B.      "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.    "Defendant" shall refer to Defendant James F. Humphreys & Associates, L.C., and, where applicable, any other person acting on purporting to act on its behalf, employees, and agents, including any attorney or other representative.

D.    "Other Defendants" in this Set of Requests shall refer to the following other Defendants to this action: James F. Humphreys and Cindy J. Kiblinger.

E.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney or other representative.

F.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

G.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

H.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, or otherwise.

I.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially

2

verbatim recital of an oral statement made by the person making it and contemporaneously recorded.

J.      "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto.  Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, dairy entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated

3

computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made. The terms "document" and "documents" shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within he foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the Defendant. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

K.    "Relating to" as used in these requests means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

L.    "Injury" or "injuries" as used herein includes not only physical or mental injury, but economic or financial injury as well.

M.    The "Monsanto case" refers to the case Allen, et al. v. Monsanto Company, et al., Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

4

N.     If you object to production of any document based on a claim of privilege, work product or any other exemption from discovery, please provide a privilege log describing in detail the document and the reasons for each objection.

## REQUESTS FOR PRODUCTION

1.     All documents reflecting the ownership of Defendant James F. Humphreys & Associates, L.C. ("JFHA") from 2004 to the present.

2.     All documents that allegedly support Defendant Humphreys' decision to terminate the employment of Plaintiff Urban on May 4, 2007.

3.     All contemporaneous notes or electronic mail messages related to any complaints that Defendant Humphreys, Defendant Kiblinger, or any other employee of Defendant JFHA had regarding Plaintiff Urban.

4.     All documents related to any potential settlement of the Monsanto case.

5.     All documents that identify any raise or bonus provided to any attorney employed by Defendant James F. Humphreys & Associates, L.C. from 2000 to the present.

6.     All documents related to the potential settlement of any Vioxx, Celebrex or Bextra case.

7.     All documents related to any prediction or estimate of the potential settlement value of or any attorneys fees that may be earned from the Monsanto case.

8.     All documents related to any prediction or estimate of the potential settlement value of or any attorneys fees that may be earned from the Vioxx, Celebrex, and/or Bextra cases.

9.     All documents related to any potential sale of or offer to sell Defendant James F. Humphreys & Associates, L.C. or any assets of JFHA by Defendant Humphreys to any potential purchaser.

10.    All documents related to any insurance agreement under which any person carrying on an insurance business may be liable to satisfy any part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

11. All accounting documents related to the operation of Defendant JFHA from 2000 to the present, including but not limited to all documents reflecting any attorneys' fees earned by the firm.

12. All documents that describe the net worth of Defendant JFHA on or around May 4, 2007.

13. A complete copy of the personnel file of Thomas F. Urban II.

14. A complete copy of any other file regarding Thomas F. Urban II.

15. All documents regarding Thomas F. Urban II's performance or employment.

16. Any memorandum, whether on paper or electronic, regarding Plaintiff Thomas F. Urban II written by Defendant Kiblinger.

17. All documents regarding any attempt to convince Plaintiff Urban to resign from Defendant JFHA.

18. All documents relating to any conversations with Plaintiff Urban.

19. All documents related to efforts to obtain as much information from Plaintiff Urban prior to the termination of Plaintiff Urban's employment.

20. All notes from the meeting on or about April 18, 2007 at which Plaintiff Urban's employment with Defendant JFHA was discussed.

21. All documents regarding any attempt to find excuses to terminate the employment of Plaintiff Urban.

22. Any memorandum, whether on paper or electronic media, regarding Thomas F. Urban II written by any employee or agent of Defendant JFHA, including but not limited to Timothy Barber.

23. All documents that reflect any discussion of Defendant Humphrey's termination of the employment of Plaintiff Urban or Plaintiff Urban's departure from Defendant JFHA, including but not limited to any correspondence with any client of Defendant JFHA and any court.

24. All documents supplied by Defendants, or anyone acting on Defendants' behalf, to any expert who is expected to testify at the trial of this case.

25. All documents that will be relied upon as a basis for the opinions of any expert who is expected to testify at the trial of this case.

6

26.    A current curriculum vitae for each expert witness identified in Defendants'
       Rule 26(b)(4) statement.

27.    All documents relating to each statement, action, or admission against interest,
       or declaration against interest which Defendants contend was made by
       Plaintiff, or any person whom Defendant alleges to be Plaintiff's agent,
       servant, and/or employee.

28.    All documents referring or relating to any communication between Defendant,
       its agents, servants, and/or employees and the Plaintiff.

29.    All documents referred to or identified in Defendant's responses to the
       interrogatories propounded to Defendants by the Plaintiff.

30.    All documents regarding the payment of bonuses by Defendant JFHA based
       upon any formula or for any reason.

31.    All electronic mail messages relating to Plaintiff Urban's departure from
       Defendant JFHA.

32.    All documents referred to or identified in Defendant's responses to the
       requests for admissions propounded to Defendants by the Plaintiff.

33.    All documents relating to any conversations either individual Defendant has
       had with any individual, other than Defendants' own counsel, concerning facts
       and/or allegations noted in this lawsuit, i.e. Plaintiff's complaint or
       Defendant's defenses.

34.    Each picture, diagram, document, recording (electronic, photographic, or
       written), or other object (real evidence) which is known to you and which
       relates to the matters alleged in Plaintiff's complaint herein or which you
       contend support any of the defenses to the claims in Plaintiff's complaint.

35.    All documents relating to any statement, oral, written, or recorded, given to
       you, your agents, or attorneys concerning the matters alleged in the Complaint
       or in your answer herein or which may otherwise relate to any defense upon
       which you intend to rely.

36.    All documents upon which Defendants intend to rely in proving any allegation
       or denial contained in its Answer and/or which Defendants intend to offer into
       evidence as exhibits or use as demonstrative aids at the trial of this lawsuit.

37.    All statements, memoranda, notes, calendars, diaries, reports, photographs, or
       other materials that are in any way related to the Defendant's denials or
       allegations within its Answer to the Complaint.

38.    All documents not previously requested which relate to the claims in this case.

39.    All documents not previously requested which you contend support any other aspect of your defense in this case.

40.    All documents not previously requested that contradict any aspect of your defense in this case.

41.    All documents related to a meeting on or about April 18, 2007, at which Plaintiff Urban's employment with Defendant JFHA was discussed.

42.    All documents related to all gross and net profits made by Defendant JFHA since 2000.

DATED this ___ day of July, 2007.

Respectfully submitted,

Mark A. Smith
Law Office of Mark A. Smith, LLC
  D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20006
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II

8

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| THOMAS F. URBAN II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIV. ACTION NO. 2007-CA-003185 B** |
| | ) | **Judge Mary A. Terrell** |
| | ) | |
| JAMES F. HUMPHREYS, | ) | **Next Event: Initial Conference** |
| et al. | ) | **August 31, 2007** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS
## TO DEFENDANT JAMES F. HUMPHREYS & ASSOCIATES, L.C.

Plaintiff Thomas F. Urban II ("Urban"), pursuant to D.C. Superior Court Rule

36(a), hereby requests that Defendant James F. Humphreys & Associates. L.C. ("JFHA")

appropriately answer, separately, fully in writing, and under oath, each of the following

requests for admission and are further requested to serve your Answer on Plaintiff Urban,

within forty-five (45) days from the date of service of these requests for admission, by

causing same to be delivered to the offices of Mark A. Smith, Law Office of Mark A.

Smith, LLC, 1785 Massachusetts Avenue, N.W., Suite 100, Washington, D.C. 20006.

Defendant JFHA is further requested to supplement the Answers to these requests

for admissions not less than thirty (30) days prior to the beginning of trial if it later

obtains information upon the basis of which:

1.      You know that the Answer to any request for admission was incorrect when
made; or

2.      You know that the Answer to any such request for admission though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is in substance a knowing concealment or misrepresentation.

If you object to any request for admission based on a claim of privilege, work product or any other exemption from discovery, state fully the reasons for each objection and answer all portions of the requests for admission to which the claimed exemption does not apply.

Unless the request can be completely admitted, Plaintiff Urban requests that Defendant James F. Humphreys & Associates, L.C. admit so much of the request as is true and qualify or deny only the remainder.

For each of the requests for admission above, unless your response has been an unqualified admission, set forth in detail the evidence upon which you expect to rely to contest the requested admission.

## DEFINITIONS AND INSTRUCTIONS

A.      These requests for admission are submitted for the purposes of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence by Plaintiff Urban on subjects covered by these requests or as an admission at trial of the relevance or materiality of any of the matters covered by these requests.

B.      "Plaintiff" or "Urban" shall refer to Plaintiff Thomas F. Urban II.

C.      "Defendant" shall refer to Defendant James F. Humphreys & Associates, L.C., and, where applicable, any other person acting on purporting to act on its behalf, employees, and agents, including any attorney or other representative.

2

D.    "Other Defendants" in this Set of Requests shall refer to the following other Defendants to this action: James F. Humphreys and Cindy J. Kiblinger.

E.    "You" and "your" shall refer to Defendant, as well as any other persons acting or purporting to act on behalf of Defendant, including any attorney or other representative.

F.    As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these requests any document or information that might be deemed outside its scope by another construction.

G.    "Person" or "people" when used in this Request includes human beings, corporations, partnerships, associations, firm, proprietorship, joint ventures, governmental agencies (federal, state or local), or any other legal or business organization.

H.    "Communication" shall mean and include every manner or means of disclosure, transfer, transmittal, or exchange, and every disclosure, transfer, transmittal, or exchange of information, whether face-to-face, by telephone, mail, personal delivery, or otherwise.

I.    "Statement" means and includes any written or graphic statement signed or otherwise adopted or approved by the users in making it, any stenographic, mechanical, electrical, or other recording or transcription thereof which is a substantially verbatim recital of an oral statement made by the person making it and contemporaneously recorded.

J.    "Document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, telexes, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations or interview, summaries or other records of personal conversations, minutes or summaries or other records of personal meetings and conferences, summaries or other records of meetings and conferences, summaries, dairies, dairy entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, work sheets, work appears, drafts, graphs, maps, charts, tables, marginal notations, notebooks, telephone bills or records, bills, statements records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcription or hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated computer sorted, or electronically sorted matter, however and by whomever produced, prepared, reproduced, disseminated, or made. The terms "document" and "documents"

4

shall include all copies of documents by whatever means made, except that where a documents is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within the foregoing description that is in the possession, control or custody of the Defendant or in the possession, control or custody of any attorney for the Defendant. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

K.      "Relating to" as used in these requests means and includes pertaining to, recording, evidencing, containing, setting forth, reflecting, showing, disclosing, describing, explaining, summarizing, constituting, concerning or referring to, whether directly or indirectly.

L.      "Injury" or "injuries" as used herein includes not only physical or mental injury but economic or financial injury as well.

M.      The "Monsanto case" refers to the case Allen, et al. v. Monsanto Company, et al., Civil Action Number 04-C-465, pending in the Circuit Court of Putnam County, West Virginia, and, where appropriate, any related case including the Solutia bankruptcy and the personal injury class action filed against Monsanto and others in the Circuit Court of Kanawha County, West Virginia.

N.    If you object to any of these requests for admission based on a claim of privilege, work product or any other exemption from discovery, please provide a privilege log describing in detail the reasons for each objection.

## REQUESTS FOR ADMISSION

1.    Defendant Humprheys has ultimate decision authority over Defendant James F. Humphreys & Associates, L.C. ("JFHA").

2.    Defendant Humphreys is the only shareholder of Defendant JFHA.

3.    Plaintiff Thomas F. Urban II was hired by Defendant James F. Humphreys to work for Defendant James F. Humphreys & Associates, L.C. effective July 2004.

4.    John M. Mason interviewed Plaintiff Thomas F. Urban II prior to Urban's hiring by Defendant Humphreys.

5.    John M. Mason was the agent of Defendant James F. Humphreys & Associates, L.C. ("JFHA") when he interviewed Plaintiff Urban.

6.    John M. Mason was an employee of Defendant JFHA when he interviewed Plaintiff Urban.

7.    Plaintiff Urban was hired by Defendant Humphreys at a salary of $160,000 per year.

8.    Plaintiff Urban's initial salary of $160,000 at Defendant JFHA was substantially lower than the average salary for private law firm attorneys with Plaintiff Urban's experience in the Washington, D.C. area in 2004.

9.    Plaintiff Urban was given a $10,000 raise by Defendant Humphreys effective January 2005.

6

10.     Plaintiff Urban's salary at Defendant JFHA was $170,000 per year effective January 2005.

11.     Plaintiff Urban's salary of $170,000 at Defendant JFHA in 2005 was substantially lower than the average salary for private law firm attorneys with Plaintiff Urban's experience in the Washington, D.C. area in 2005.

12.     Defendant Humphreys assured Plaintiff Urban that, in addition to his salary, Plaintiff Urban would receive a percentage of the attorneys' fees received on the cases on which Plaintiff Urban worked.

13.     Plaintiff Urban was hired by Defendant Humphreys in part to develop new types of cases not previously handled by Defendant JFHA.

14.     Plaintiff Urban was hired by Defendant Humphreys in part to handle large environmental toxic tort cases.

15.     Defendant Humphreys promised Plaintiff Urban that Humphreys would share the profits of the cases on which Plaintiff Urban worked while at Defendant JFHA.

16.     Plaintiff Urban did not receive any raise in salary by Defendant JFHA at any time after January 2005.

17.     Plaintiff Urban did not receive any bonuses from Defendant JFHA at any time during his employment at Defendant JFHA.

18.     Plaintiff Urban did not receive any share of any profits from Defendant JFHA at any time during his employment at Defendant JFHA.

19.     After Plaintiff Urban did not receive any raise or bonus at the end of 2005, Defendant Humphreys assured Urban that he would receive a substantial bonus after the Monsanto case was resolved successfully.

20.    After Plaintiff Urban did not receive any raise or bonus at the end of 2005,

Defendant Humphreys assured Urban that Humphreys would make Urban "rich" after the

Monsanto case was resolved successfully.

21.    After Plaintiff Urban did not receive any raise or bonus at the end of 2005,

Defendant Humphreys assured Urban that he would receive a bonus if the Vioxx,

Celebrex, and Bextra cases were resolved successfully.

22.    Plaintiff Urban spent substantial time in Charleston, West Virginia in 2005 and

2006, working on cases for Defendant JFHA.

23.    After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant

Humphreys assured Urban that he would receive a substantial bonus after the Monsanto

case was resolved successfully.

24.    After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant

Humphreys assured Urban that Humphreys would make Urban "rich" after the Monsanto

case was resolved successfully.

25.    After Plaintiff Urban did not receive any raise or bonus in 2006, Defendant

Humphreys assured Urban that he would receive a bonus if the Vioxx, Celebrex, and

Bextra cases were resolved successfully.

26.    Defendant Humphreys asked Plaintiff Urban to be the lead attorney for Defendant

JFHA in the class action case styled Allen, et al. v. Monsanto, et al. (the "Monsanto

case").

27.    Defendant JFHA had never handled a class action environmental toxic tort case

before Plaintiff Urban joined Defendant JFHA.

28.    Stuart Calwell specifically requested that Plaintiff Urban work on the Monsanto

8

case.

29.     Stuart Calwell is the principal attorney of The Calwell Practice.

30.     The Calwell Practice is co-counsel with Defendant JFHA on the Monsanto case.

31.     Plaintiff Urban convinced Stuart Calwell to sign the Memorandum of
Understanding governing the co-counsel relationship between Defendant JFHA and The
Calwell Practice.

32.     It was only because of Plaintiff Urban's tenacity that Stuart Calwell signed the
Memorandum of Understanding for the Monsanto case.

33.     Plaintiff Urban began working on the Monsanto case in September 2004.

34.     The Allen, et al. v. Monsanto, et al. case was filed in December 2004.

35.     Plaintiff Urban did substantially all of the work done on the Monsanto case by
Defendant JFHA from September 2004 until May 2007.

36.     Plaintiff Urban repeatedly requested the assistance of another attorney on the
Monsanto case prior to April 2007, but was provided very little such assistance.

37.     Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant
JFHA's Vioxx cases effective October 2004.

38.     Defendant JFHA had never handled a large scale pharmaceutical litigation like
the Vioxx cases prior to October 2004.

39.     Plaintiff Urban did substantially all of the legal work done on the Vioxx cases
handled by Defendant JFHA from October 2004 through October 2006.

40.     Defendant Humphreys wanted Plaintiff Urban to file 1000 Vioxx cases.

41.     Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on
information provided by the clients.

42.    Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases based solely on information provided by the clients before any of the client's medical records had been ordered.

43.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Vioxx cases to reduce costs.

44.    Defendant Humphreys ordered Plaintiff Urban to file Vioxx cases without any expert reports from a physician that supported specific causation for that specific Vioxx case.

45.    Plaintiff Urban reviewed more than 2000 Vioxx intakes for potential clients.

46.    Plaintiff Urban filed over 275 Vioxx cases while employed at Defendant JFHA.

47.    Plaintiff Urban repeatedly requested the assistance of another attorney on the Vioxx cases prior to September 2006, but was provided very little such assistance.

48.    Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant JFHA's Celebrex cases effective November 2004.

49.    Plaintiff Urban did substantially all of the legal work done on the Celebrex cases handled by Defendant JFHA from November 2004 through October 2006.

50.    Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients.

51.    Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases based solely on information provided by the clients before any of the client's medical records had been ordered.

52.    Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on the ordering of medical records for Celebrex cases to reduce costs.

53.   Defendant Humphreys ordered Plaintiff Urban to file Celebrex cases without any
expert reports from a physician that supported specific causation for that specific
Celebrex case.

54.   Plaintiff Urban filed over 100 Celebrex cases while employed at Defendant
JFHA.

55.   Plaintiff Urban repeatedly requested the assistance of another attorney on the
Celebrex cases prior to September 2006, but was provided very little such assistance.

56.   Defendant Humphreys assigned Plaintiff Urban to handle all of Defendant
JFHA's Bextra cases effective November 2004.

57.   Plaintiff Urban did substantially all of the legal work done on the Bextra cases
handled by Defendant JFHA from November 2004 through October 2006.

58.   Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on
information provided by the clients.

59.   Defendant Humphreys ordered Plaintiff Urban to file Bextra cases based solely on
information provided by the clients before any of the client's medical records had been
ordered.

60.   Against the advice of Plaintiff Urban, Defendant Humphreys put a moratorium on
the ordering of medical records for Bextra cases to reduce costs.

61.   Defendant Humphreys ordered Plaintiff Urban to file Bextra cases without any
expert reports from a physician that supported specific causation for that specific Bextra
case.

62.   Plaintiff Urban filed over 30 Bextra cases while employed at Defendant JFHA.

63.   Plaintiff Urban repeatedly requested the assistance of another attorney on the

11

Bextra cases prior to September 2006, but was provided very little such assistance.

64.     Defendant Humphreys told Plaintiff Urban that he was doing a terrific job at Defendant JFHA in January 2005.

65.     Defendant Humprheys repeatedly told Plaintiff Urban that he was doing a very good job working at Defendant JFHA in 2005 and 2006.

66.     Plaintiff Urban was never provided with any paralegals in the Washington, D.C. office of Defendant JFHA.

67.     Plaintiff Urban was never provided with any legal secretaries in the Washington, D.C. office of Defendant JFHA.

68.     For most of 2006, the Washington, D.C. office of Defendant JFHA did not have a receptionist.

69.     Because the Washington, D.C. office of Defendant JFHA did not have a receptionist for most of 2006, Plaintiff Urban was required to answer the telephone and take messages for Defendant Humphreys during that time.

70.     Because the Washington, D.C. office of Defendant JFHA did not have a receptionist for most of 2006, Plaintiff Urban was required to run personal errands for Defendant Humphreys including but not limited to mailing personal correspondence.

71.     Defendant Humphreys terminated the employment of John M. Mason in 2005 without any prior notice.

72.     Defendant Humphreys terminated Plaintiff Urban's employment at Defendant JFHA in part to avoid paying Plaintiff Urban any attorneys's fees from the Monsanto case.

73.     Defendant Humphreys terminated Plaintiff Urban's employment at Defendant

JFHA in part to avoid paying Plaintiff Urban any attorneys's fees from the Vioxx, Celebrex, and Bextra cases.

74.    Representatives from the Monsanto Company met with Defendant Humphreys, Plaintiff Urban, and representatives from The Calwell Practice for the first settlement negotiation in the Monsanto case on March 30, 2007.

75.    Based upon the promises made by the Monsanto representatives during the March 30, 2007 settlement meeting, Defendant Humphreys agreed to a ninety day stay in all proceedings in the Monsanto case.

76.    Defendant Humphreys agreed to this ninety day stay in the Monsanto case despite the fact that the stay would postpone the class certification hearing in the Monsanto case scheduled in May 2007.

77.    Defendant Humphreys has the ultimate authority to terminate the employment of any employee at Defendant JFHA.

78.    Defendant Humphreys made the decision to terminate the employment of Plaintiff Urban.

79.    Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk on or about April 11, 2007.

80.    After Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk, Humphreys raised his arm with a clinched fist and threatened Urban on or about April 11, 2007.

81.    After Defendant Humphreys slammed the door to Plaintiff Urban's office and charged toward Urban while Urban was at his desk and Humphreys raised his arm with a clinched fist and threatened Urban, Humphreys said that Urban was close to being fired

13

on or about April 11, 2007.

82.    After April 11, 2007, Defendant Humphreys never again mentioned the possibility that Plaintiff Urban would be fired to Urban until May 4, 2007.

83.    In April, 2007, Defendant Humphreys through Defendant Kiblinger ordered Plaintiff Urban to train three other JFHA attorneys to work on the Monsanto case.

84.    In early May 2007, at the instruction of Defendant Humphreys, Defendant Kiblinger insisted that Plaintiff Urban file the first set of six Bextra Stevens Johnson Syndrome settlement filings.

85.    It is the policy of Defendant JFHA to provide bonuses to attorneys based upon a percentage of the attorneys' fees of the cases that they work on while at the firm.

86.    Defendants Humphreys and Defendant JFHA will likely profit in an enormous amount, likely in the millions of dollars, due to the hard work and extreme effort engaged in by Plaintiff Urban on the Monsanto and pharmaceuticals cases.


DATED this ___ day of July, 2007.


Respectfully submitted,


Mark A. Smith
Law Office of Mark A. Smith, LLC
  D.C. Bar No. 439116
1785 Massachusetts Avenue, N.W.,
Suite 100
Washington, D.C. 20006
(202) 776-0022
(202) 756-7516 (facsimile)

Attorney for Plaintiff Thomas F. Urban II


14

## CERTIFICATE OF SERVICE

I I hereby certify that on this 2nd day of July, 2007, I caused a true and correct copy of the following: (1) Amended Complaint, (2) First Set of Interrogatories to each of the specifically named Defendants, (3) First Set of Production of Documents to each of the specifically named Defendants., and (4) First Set of Request for Admissions to each of the specifically named Defendants, to be delivered by Hand or Certified Mail, depending on the circumstances:


JAMES F. HUMPHREYS
3030 K Street, N.W.
Penthouse Apartment 301
Washington, D.C. 20007

CINDY J. KIBLINGER
105 Broncroft Place
Daniels, West Virginia 25832

JAMES F. HUMPHREYS & ASSOCIATES, L.C.
1200 New Hampshire Avenue, NW
Suite 510
Washington, DC 20036

Mark A. Smith

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                                  **Civil Action No.**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

### AFFIDAVIT OF JAMES F. HUMPHREYS

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO WIT:

      Personally appeared before me, an officer duly authorized by law to administer oaths, is

James F. Humphreys, who, after being duly sworn, states as follows:

      1.     My name is James F. Humphreys, and I am competent in all respects to testify

regarding the matters set forth herein, and suffer from no legal disability, and make this affidavit

based on my personal knowledge as a named Defendant herein.

      2.     At the time of the commencement of this lawsuit, I was and still am domiciled in the

State of West Virginia.

      3.     I actually live in the State of West Virginia.

      4.     I have a driver's license issued in the State of West Virginia

      6.     I maintain my primary residence in the State of West Virginia.

      5.     I own real property in the State of West Virginia.

      6.     I own automobiles registered and insured in the State of West Virginia.



EXHIBIT
B

7.   I maintain my primary office in the State of West Virginia.

8.   I maintain my primary telephone number in the State of West Virginia.

9.   I am registered to vote in the State of West Virginia.

10.   I pay income taxes in the State of West Virginia.

11.   I maintain a satellite office in the District of Columbia.

12.   I rent, on a month-to-month basis, an apartment in the District of Columbia.

13.   I maintain a telephone number in the District of Columbia.

14.   I do not actually reside in the District of Columbia, but maintain an apartment for my convenience.

15.   I do not have a driver's license issued in the District of Columbia.

16.   I do not own automobiles registered or insured in the District of Columbia.

18.   I am not registered to vote in the District of Columbia.

19.   I am not liable for income taxes in the District of Columbia.

FURTHER AFFIANT SAITH NOT.

_____
James F. Humphreys

Taken, subscribed and sworn to before me this 20 day of July , 2007.

My commission expires: September 5, 2016 .

_____
Notary Public

(NOTARIAL SEAL)



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHARON D. SEFTON
1929 Pinewood Drive
Sissonville, WV 25320
My Commission Expires Sept. 5, 2016

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                                 **Civil Action No.**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

### AFFIDAVIT OF CINDY J. KIBLINGER

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO WIT:

      Personally appeared before me, an officer duly authorized by law to administer oaths, is

Cindy J. Kiblinger, who, after being duly sworn, states as follows:

      1.      My name is Cindy J. Kiblinger, and I am competent in all respects to testify regarding

the matters set forth herein, and suffer from no legal disability, and make this affidavit based on my

personal knowledge as a named Defendant herein.

      2.      At the time of the commencement of this lawsuit, I was and still am domiciled in the

State of West Virginia.

      3.      I live in the State of West Virginia.

      4.      I have a driver's license issued in the State of West Virginia

      6.      I maintain a residence in the State of West Virginia.

      5.      I own real property in the State of West Virginia.

      6.      I own an automobile registered and insured in the State of West Virginia.



7.    I work in the State of West Virginia.

8.    I maintain a telephone number in the State of West Virginia.

9.    I am registered to vote in the State of West Virginia.

10.    I pay income taxes in the State of West Virginia.

FURTHER AFFIANT SAITH NOT.


_Cindy J. Kiblinger_
Cindy J. Kiblinger

Taken, subscribed and sworn to before me this **23** day of _July_, 2007.

My commission expires: _March 21, 2015_.


_Rebecca M. May_
Notary Public

(NOTARIAL SEAL)

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
REBECCA M. MAY
James F. Humphreys & Associates
500 Virginia Street E., Ste 800
Charleston, WV 25301
My Commission Expires March 21, 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**THOMAS F. URBAN, II,**

      **Plaintiff,**

**vs.)**                                                    **Civil Action No.**

**JAMES F. HUMPHREYS;**
**CINDY J. KIBLINGER; and**
**JAMES F. HUMPHREYS &**
**ASSOCIATES, L.C.**

      **Defendants.**

### AFFIDAVIT OF JAMES F. HUMPHREYS

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO WIT:

      Personally appeared before me, an officer duly authorized by law to administer oaths, is

James F. Humphreys, who, after being duly sworn, states as follows:

      1.     My name is James F. Humphreys, and I am competent in all respects to testify

regarding the matters set forth herein, and suffer from no legal disability, and make this affidavit

based on my personal knowledge as President of James F. Humphreys & Associates, L.C., a West

Virginia corporation.

      2.     The corporation known as James F. Humphreys & Associates, L.C., is a corporation

organized and existing under the laws of the State of West Virginia since 1996.

      3.     The corporation known as James F. Humphreys & Associates, L.C., has its principal

place of business in the State of West Virginia.

      4.     The principal office address of the corporation known as James F. Humphreys &

Associates, L.C., is 500 Virginia Street East, Suite 800, Charleston, West Virginia 25301.



EXHIBIT
D

4.    The corporation known as James F. Humphreys & Associates, L.C., is not incorporated in the District of Columbia.

5.    The corporation known as James F. Humphreys & Associates, L.C., does not have its principal place of business in the District of Columbia.


FURTHER AFFIANT SAITH NOT.

_____
James F. Humphreys

Taken, subscribed and sworn to before me this __26__ day of _July_, 2007.
My commission expires: _September 5, 2016_.


_____
Notary Public

(NOTARIAL SEAL)



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHARON D. SEFTON
1929 Pinewood Drive
Sissonville, WV 25320
My Commission Expires Sept. 5, 2016